Byron BREASTON, Appellant–
Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 20A04–0712–CR–727.

Court of Appeals of Indiana.

Aug. 27, 2008.

Transfer Granted Oct. 15, 2008.

Joseph M. Cleary, Hammerle & Cleary, Indianapolis, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Ian McLean, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

BRADFORD, Judge.

Appellant–Defendant Byron Breaston appeals his conviction, following a jury tri-

al, for Theft,[1] a Class D felony, and the finding that he was a habitual offender. Breaston raises numerous issues on appeal, which we restate as: (1) whether the trial court erred in denying Breaston's request for a mistrial; (2) whether the evidence was sufficient to support the finding that he was a habitual offender; (3) whether the trial court erred in allowing the State to amend the habitual offender enhancement information; (4) whether the sentences resulting from separate findings that one is a habitual offender in separate criminal proceedings may be served consecutively to one another; (5) whether the trial court erred in admitting certain evidence at trial; and (6) whether the trial court erred in denying Breaston's motion to dismiss. We affirm.

## FACTS AND PROCEDURAL HISTORY

On February 13, 2004, Kristie Kirk was the manager of a Hollywood Video ("video store") in Elkhart, Around 4:30 p.m., Breaston entered the video store. Breaston drew Kirk's attention because he "floated" around the various sections of the store without looking at anything in particular and also because Kirk caught Breaston watching what she was doing. Tr. p. 156. Eventually, Breaston inquired about a membership but claimed he did not have any identification. When Breaston attempted to leave the video store, the store's electronic theft-detection unit sounded an alarm. Kirk asked Breaston to pass through the detection unit multiple times, and the unit sounded each time. Kirk then asked Breaston to empty his pockets, and, as he did so, she noticed the outlines of several DVD cases showing through Breaston's clothing. After noticing the DVD cases, Kirk allowed Breaston to leave the store and called the police.

Kirk reported the theft to the police as she watched Breaston walk away from the video store and into the parking lot of a nearby store named Martin's. Kirk described Breaston's clothing and his direction of travel. While Kirk was watching Breaston, a squad car pulled into the Martin's parking lot. Elkhart Police Officer Chad Odle approached Breaston after observing that he matched the description of the perpetrator of the possible theft at the video store. When Officer Odle attempted to speak to Breaston, Breaston became agitated and asked Office Odle "what he wanted." Tr. p. 202. After Officer Odle told Breaston to calm down, Breaston told Officer Odle that he had just been asked to leave the video store.

While Officer Odle was speaking to Breaston, Elkhart Police Detective Todd Thayer arrived. Detective Thayer noticed the outline of DVD boxes protruding from Breaston's clothing. Officer Odle and Detective Thayer performed a pat-down search and found several DVDs tucked into Breaston's pants. Breaston was arrested.

On February 18, 2004, the State charged Breaston with theft as a Class D felony and alleged that he was a habitual offender. On April 25, 2007, Breaston filed a motion to suppress the DVDs and moved to dismiss the theft charge. On July 13, 2007, Breaston filed a motion to dismiss the habitual offender charge. The trial court denied Breaston's motions. On August 9, 2007, the State filed a motion to amend the habitual offender information. The trial court granted the State's motion.

On August 21, 2007, Breaston was tried before a jury. Breaston moved for a mistrial on the grounds that the venire pool did not contain a proper representation of

1. Ind.Code § 35–43–4–2(a) (2003).

minority venirepersons. The trial court denied Breaston's motion. The jury found Breaston guilty of theft. On September 5, 2007, the jury found Breaston to be a habitual offender. Following judgment of conviction, the trial court sentenced Breaston to three years for the theft conviction enhanced by four and one-half years due to the habitual offender finding. Breaston now appeals.

## DISCUSSION AND DECISION[2]

### I. Motion for Mistrial

■ Breaston contends that the trial court erred in denying his motion for a mistrial because the jury panel failed to reflect a fair cross-section of the Elkhart County community, which has an African–American population of approximately five and one-half percent.[3] The United States Supreme Court has long held that the selection of a petit jury from a representative cross-section of the community is an essential component of the Sixth Amendment right to a jury trial. *Taylor v. Louisiana,* 419 U.S. 522, 528, 95 S.Ct. 692, 42 L.Ed.2d 690 (1975). There is no requirement, however, that a jury panel be a microcosm of a county or a court district. *Williams v. State,* 877 N.E.2d 845, 846–47 (Ind.Ct.App.2007), *trans. denied.* Jurors need not be mathematically proportioned to the character of the community. *Id.* at 847. The primary concern is that the jury selection not be arbitrary. *Id.*

■ Breaston claims he has made a *prima facie* showing of a violation of the fair cross-section requirement. To make

such a showing, a defendant bears the burden of establishing the following:

(1) that the group alleged to be excluded is a "distinctive" group in the community; (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that this underrepresentation is due to systematic exclusion of the group in the jury-selection process.

*Dye v. State,* 717 N.E.2d 5, 19 (Ind.1999) (quoting *Duren v. Missouri,* 439 U.S. 357, 364, 99 S.Ct. 664, 58 L.Ed.2d 579 (1979)). If a defendant has made a *prima facie* showing of a fair cross-section violation, the State may still justify the juror selection process by showing that the attainment of a fair cross-section is incompatible with a significant state interest. *Williams,* 877 N.E.2d at 847.

The State readily concedes that African–Americans are a "distinctive" group in the community, thus satisfying the first *Duren* criterion. Thus, our focus shifts to the second and third *Duren* criteria. With respect to the second criterion, Breaston claims that the zero-percent representation of African–Americans in his jury pool was unreasonable, as compared to the approximate five and one-half percent African–American population of Elkhart County. Further, with respect to the third criterion, Breaston claims that African–Americans have been systematically excluded from jury service.

2. Breaston's brief is largely devoid of pinpoint citations to help us determine where, within a decision, support for his contentions may be found. We direct Breaston to Indiana Appellate Rule 22(A), which states that citations to cases in briefs should follow the format put forth in the current edition of a Uniform System of Citation (Bluebook). We will not,

on review, search through the authorities cited by a party in order to try to find legal support for its position. *Wright v. Elston,* 701 N.E.2d 1227, 1231 (Ind.Ct.App.1998), *trans. denied.*

3. *See* http://quickfacts.census.gov/qfd/states/ 18/18039.html (last visited August 6, 2008).

■ To prove systematic exclusion, "a defendant must demonstrate that a large discrepancy between the percentage of a certain group in the community and the percentage of that group in jury panels occurs 'not just occasionally,' but on a regular basis." *Id.* Here, Breaston presented no evidence relating to the representation of African–Americans on jury panels for other trials in Elkhart County but merely relies upon the jury panel in his trial. Breaston did present U.S. census data which demonstrates that Elkhart County's African–American population equals approximately five and one-half percent of Elkhart County's total population, but this data does not demonstrate what percentage of Elkhart County's African–American population is eligible for jury service. The census data alone is insufficient to prove systematic exclusion of African–Americans from the jury, and, as a result, Breaston has failed to meet his burden of establishing that any underrepresentation of African–Americans in his jury panel was due to the systematic exclusion of African–Americans in the Elkhart County jury selection process. *See id.*

Also relevant to the systematic exclusion issue is whether a disproportionate and consistent exclusion of a particular group from jury panels can be traced to the system by which juries are selected. *Id.* Breaston has failed to provide any explanation of how Elkhart County currently selects prospective jurors. Without any explanation of how Elkhart County currently selects prospective jurors, we are unable to determine whether Elkhart County's system consistently excludes a disproportionate number of African–Americans from jury service, and thus, we are unable to determine the propriety of Elk-

hart County's jury selection process. Therefore, we conclude that Breaston has failed to establish that African–Americans are systematically excluded from Elkhart County jury panels as required under the third *Duren* criterion.[4] We further conclude that as a result, Breaston has failed to make a *prima facie* showing that Elkhart County's system for selecting venirepersons violates the fair cross-section requirement of the Sixth Amendment. *See id.* The trial court did not err in denying Breaston's motion for a mistrial on this ground.

## II. Habitual Offender Enhancement

Breaston next challenges on numerous grounds the finding that he was a habitual offender. Specifically, Breaston claims that the evidence was insufficient to support a finding that he was a habitual offender, the State should not have been permitted to amend the habitual offender enhancement information, and the trial court abused its discretion in imposing consecutive habitual offender enhancements.

### A. Sufficiency of the Evidence

■ Breaston claims that the State failed to provide sufficient evidence to prove that he was a habitual offender. Our standard of review for sufficiency claims is well-settled. *Gentry v. State*, 835 N.E.2d 569, 572 (Ind.Ct.App.2005). We neither reweigh the evidence nor judge the credibility of the witnesses. *Id.* We only consider the evidence most favorable to the verdict and the reasonable inferences that can be drawn therefrom. *Id.* Where there is substantial evidence of probative value to support the verdict, it will not be disturbed. *Id.*

---

4. Because we conclude that Breaston failed to meet his burden of proving the third *Duren* criterion, we need not determine whether the alleged underrepresentation of African–Americans in venires from which Elkhart County juries are selected is unreasonable.

Pursuant to Indiana law, a person is a habitual offender if the jury finds that the State proved beyond a reasonable doubt that the person had accumulated two prior unrelated felony convictions. Ind.Code § 35–50–2–8(g) (2003). During the habitual offender phase of the trial, the State demonstrated that on December 29, 2003, Breaston was convicted of theft, a Class D felony, in Elkhart County, and that on July 20, 1988, Breaston was convicted of receiving stolen property, a Felony in the Fourth Degree, in Miami County, Ohio. The State alleged that a Felony in the Fourth Degree in Ohio is equivalent to a Class D felony in Indiana.

Breaston argues that the State failed to establish that his conviction in Ohio for Receiving Stolen Property, a Felony in the Fourth Degree, was the equivalent to a Class D felony in Indiana.[5] A felony conviction is defined as "a conviction, in any jurisdiction at any time, with respect to which the convicted person might have been imprisoned for more than one year." Ind.Code § 35–50–2–1(b) (2003). "Judicial notice may be taken of the law of another state 'at any stage of the proceeding.'" *Mayo v. State*, 681 N.E.2d 689, 693 (Ind. 1997) (quoting Ind. Evidence Rule 201(b), (f)). We take judicial notice that the Ohio statute in force at the time of Breaston's conviction provided that receiving stolen property was classified as a Felony in the Fourth Degree. Ohio Rev.Code Ann. § 2913.51 (LexisNexis 1987). At the time, for a Felony in the Fourth degree, the prison term was determined to be "six months, one year, or eighteen months." Ohio Rev.Code Ann. § 2929.11(D)(2) (LexisNexis 1987). Therefore, because this conviction subjected Breaston to possible incarceration of more than one year, this conviction constituted a felony under our habitual offender statute. *See Mayo*, 681 N.E.2d at 693; Ind.Code § 35–50–2–1(b). Thus, the evidence was sufficient to support the jury's finding that Breaston was a habitual offender.

## B. Amendment to Habitual Offender Information

■ Additionally, Breaston claims that the trial court abused its discretion by allowing the State to amend the habitual offender information on August 9, 2007, approximately twelve days before trial. Specifically, Breaston claims that the Indiana Supreme Court's decision in *Fajardo v. State*, 859 N.E.2d 1201, 1207 (Ind. 2007), establishes that amendments to matters of substance are prohibited unless made at least thirty days before the omnibus date for felonies, pursuant to Indiana Code section 35–34–1–5(b).

While it is true that the version of Indiana Code section 35–34–1–5(b) interpreted by *Fajardo* was in effect at the time of Breaston's crime, during the pendency of Breaston's case and before the commencement of his trial, the General Assembly amended this statute. Less than four months after the Supreme Court issued its holding in *Fajardo*, the Indiana General Assembly revised Indiana Code section 35–34–1–5. *Ramon v. State*, 888 N.E.2d 244, 250 (Ind.Ct.App.2008). The revised version of Indiana Code section 35–34–1–5 became effective on May 8, 2007, and Subsection (b) of that statute now reads as follows:

(b) The indictment or information may be amended in matters of substance and the names of material witnesses may be added, by the prosecuting attorney,

---

**5.** Breaston did not challenge the use of his 2003 theft conviction to prove he was a habitual offender.

upon giving written notice to the defendant at any time:

(1) up to:

(A) thirty (30) days if the defendant is charged with a felony; or

(B) fifteen (15) days if the defendant is charged only with one (1) or more misdemeanors

before the omnibus date; or

(2) before commencement of trial

if the amendment does not prejudice the substantial rights of the defendant.

Ind.Code § 35–34–1–5. Contrary to the statutory interpretation under *Fajardo,* under the revised subsection (b), the State can make an amendment to a matter of substance at any time before the commencement of trial so long as the amendment does not prejudice the defendant's substantial rights, *Ramon,* 888 N.E.2d at 250. We are convinced that this revised version applies to the instant case.

 Generally, the prohibitions against *ex post facto* clauses prohibit Indiana from enacting a law that imposes a punishment for an act which was not punishable at the time it was committed or imposes additional punishment to that then prescribed. *Id.* at 251. These prohibitions, however, do not give a criminal a right to be tried, in all respects, by the law in force when the crime charged was committed. *Id.* The clause is not designed to limit legislative control of remedies and modes of procedure which do not affect matters of substance. *Id.* Even though it may work to the disadvantage of a defendant, a procedural change is not *ex post facto. Id.* An amendment is procedural in nature for purposes of the *ex post facto* doctrine, and may be applied to crimes committed before the effective date, if it neither changes the elements of the crime nor enlarges its punishment. *Id.* at 252.

In *Ramon,* we concluded that the revised version of Indiana Code section 35–34–1–5 merely defined the procedures the State was required to follow to amend a charging information. Accordingly, because the revised statute created no new crimes, did not change the elements of any crime, and did not alter the sentencing statutes, it does not violate the *ex post facto* provisions of either the Indiana or United States Constitutions. *Id.*

Additionally, in the recent case of *Hurst v. State,* 890 N.E.2d 88, (Ind.Ct.App.2008),[6] this court found that strong and compelling reasons exist favoring retroactive application of the revised version of Indiana Code section 35–34–1–5(b). In *Hurst,* we observed the following:

For over twenty years prior to *Fajardo,* case law regularly permitted amendments related to matters of substance as long as the substantial rights of the defendant were not prejudiced, regardless of whether the amendments were untimely under I.C. § 35–34–1–5(b). On January 16, 2007, our Supreme Court changed course and held that the statute clearly required amendments of substance to be made not less than thirty days before the omnibus date, even if a defendant's substantial rights are not prejudiced by the amendment. The legislature immediately responded to *Fajardo* by amending the statute, effective May 8, 2007, to reflect the pre-*Fajardo* law (i.e., amendments of substance permitted anytime before trial so long as the defendant's substantial rights are not prejudiced). Thus, *Fajardo* was superseded by statute in less than four months. This prompt return to pre-*Fajardo* law indicates urgency in the legislature's desire to negate the effects of *Fajardo.* Though the legislature did

---

6. We note that this opinion is not yet certified.

not expressly provide for retroactive application of the amended statute, we are confident that this was the clear intent of such legislation.

890 N.E.2d at 95 (citations omitted).

Here, the State amended the habitual offender information on August 9, 2007, approximately twelve days before Breaston's trial commenced on August 21, 2007. Following the reasoning in *Ramon* that the retroactive application of the revised version of Indiana code section 35–34–1–5 does not violate *ex post facto* principles, we conclude that the revised version of Indiana Code section 35–34–1–5(b), which became effective prior to the commencement of Breaston's trial, applies to the instant case. *See Ramon*, 888 N.E.2d at 252; *see also Hurst*, 890 N.E.2d at 95.

Under this revised version of Indiana Code section 35–34–1–5(b) the State may amend the habitual offender information, regardless of whether the amendment is one of form or substance, so long as it does not prejudice Breaston's substantial rights. *See Ramon*, 888 N.E.2d at 252. A defendant's substantial rights include a right to sufficient notice and an opportunity to be heard regarding the charge; and, if the amendment does not affect any particular defense or change the positions of either of the parties, it does not violate these rights. *Id.* Ultimately, the question is whether the defendant had a reasonable opportunity to prepare for and defend against the charges. *Id.*

Breaston argues that his substantial rights were prejudiced by the State's amendment to the habitual offender information because the amendment was made only twelve days before the commencement of trial and there was "no earthly way that [his] evidence could apply equally to a 1999 conviction from Elkhart as it [did] to a 1988 conviction from Ohio." Appellant's Br. p. 13. Breaston, however, does not show how his defense, *i.e.*, that he had not been convicted of two prior felonies, was altered because of the amendment to the habitual offender information.

In addition, Breaston does not show how the amendment to the habitual offender information denied him a reasonable opportunity to defend against the charges. Breaston has not argued that he was unaware of the amended felony conviction used by the State to establish that he was a habitual offender. The amended felony conviction was included in the Pre–Sentence Investigation Report ("PSI") which was relied upon not only by the trial court in the instant matter, but also by the trial court in Breaston's most recent prior criminal conviction. Furthermore, the trial court granted a continuance of the habitual offender portion of the proceeding to allow Breaston additional time to prepare any additional defense that might be necessary. Because Breaston had sufficient notice of the amended habitual offender information and was provided a reasonable opportunity to defend against it, Breaston has failed to demonstrate that his substantial rights were prejudiced as a result of the State's amendment to the habitual offender information. *See Ramon*, 888 N.E.2d at 253. His challenge to the amendment is therefore without merit.

### C. Consecutive Sentences

Breaston also claims that the trial court abused its discretion in ordering that his sentence in the instant matter, which included a habitual offender enhancement, be served consecutively to his sentence imposed as a result of an unrelated prior criminal conviction. Indiana Code section 35–50–2–8 provides that the State may seek to have a person sentenced as a habitual offender for *any* felony by alleging that the person has accumulated two prior unrelated felony convictions. This means that the habitual of-

fender statute can be applicable upon a conviction of any crime which is a felony, and that no felonies are exempt from its application. *Starks v. State*, 523 N.E.2d 735, 736 (Ind.1988). A habitual offender finding, however, does not constitute a separate crime nor result in a separate sentence, but rather results in a sentence enhancement imposed upon the conviction of a subsequent felony. *Greer v. State*, 680 N.E.2d 526, 527 (Ind.1997). Such a finding is merely a jury's determination that, following a defendant's conviction for one or more felonies, the defendant has, in addition, accumulated two prior unrelated felony convictions. *Id.*

On appeal, Breaston specifically claims that the trial court abused its discretion because it ordered that his sentence, which again included a habitual offender enhancement, be served consecutively to an unrelated prior sentence which also included a habitual offender enhancement and for which he was incarcerated at the time of sentencing in the instant matter. In support, Breaston relies on a conclusion by a panel of this court that the imposition of consecutive habitual offender enhancements was improper, even where the enhancements arose from separate and unrelated trials or sentencing hearings. *Smith v. State*, 774 N.E.2d 1021, 1024 (Ind.Ct. App.2002). However, to the extent that Breaston argues that rationale employed in *Smith* applies to the facts at issue, we are unable to reconcile that rationale employed in *Smith* with Indiana Code section 35–50–1–2(d) (2003) which requires that a defendant's sentences be served consecutively under certain circumstances. Indiana Code section 35–50–1–2(d) provides the following:

If, after being arrested for one crime, a person commits another crime:

(1) before the date the person is discharged from probation, parole, or a term of imprisonment imposed for the first crime; or

(2) while the person is released:

(A) upon the person's own recognizance; or

(B) on bond;

the terms of imprisonment for the crimes *shall* be served consecutively, regardless of the order in which the crimes are tried and sentences are imposed.

Indiana Code § 35–50–1–2(d) (emphasis added).

Here, Breaston committed the instant offense while placed in a work release program following his prior criminal conviction. "Placement in a work release program is 'an alternative to commitment to the department of correction.'" *Patterson v. State*, 750 N.E.2d 879, 882 (Ind.Ct.App. 2001) (quoting Indiana Code § 35–38–2.6–3(a)). When placement is completed, the defendant must be returned to probation. *Id.* Accordingly, we conclude that because Breaston had not been discharged from his incarceration, pursuant to Indiana Code section 35–50–1–2(d), the trial court was required to order Breaston's sentence in the instant matter be served consecutively to his prior sentence. *See* Ind.Code § 35–50–1–2(d). We therefore reject Breaston's challenge on this ground.

### III. Admission of Evidence

■■■ Breaston next contends that the trial court erred in admitting certain evidence at trial. In challenging the admission of evidence, Breaston claims that the trial court erred when it denied his motion to suppress the DVDs recovered from Breaston's person. However, because we are reviewing this claim following Breaston's trial rather than in an interlocutory appeal, the issue presented is more appropriately framed as whether the trial court abused its discretion by admitting the evi-

dence at trial. *Bentley v. State,* 846 N.E.2d 300, 304 (Ind.Ct.App.2006), *trans. denied.*

 It is well-established that a trial court has broad discretion in ruling on the admissibility of evidence. *Id.* We will affirm the judgment of the trial court if it is sustainable on any legal ground apparent in the record. *Richardson v. State,* 848 N.E.2d 1097, 1101 (Ind.Ct.App.2006), *trans. denied.* Accordingly, we will reverse a trial court's ruling on the admissibility of evidence only when the trial court abused its discretion. *Bentley,* 846 N.E.2d at 304. Again, an abuse of discretion occurs if the decision is clearly against the logic and effect of the facts and circumstances before the court, or the reasonable, probable, and actual deductions to be drawn therefrom. *Anglemyer v. State,* 868 N.E.2d 482, 490 (Ind.2007).

 The Fourth Amendment to the United States Constitution protects both privacy and possessory interests by prohibiting unreasonable searches and seizures. *VanPelt v. State,* 760 N.E.2d 218, 221 (Ind.Ct.App.2001), *trans. denied.* Searches and seizures that occur without prior judicial authorization in the form of a warrant are per se unreasonable, unless an exception to the warrant requirement applies. *Id.* The State bears the burden of proving that a warrantless search falls within one of the narrow exceptions to the warrant requirements. *Id.*

 One exception to the requirement for a warrant is a search incident to arrest, which provides that a police officer may conduct a search of the arrestee's person and the area within his control. *Id.* at 222. In order for a search incident to an arrest to be valid, the arrest itself must be lawful. *Id.* Probable cause must be present to support the arrest. *Id.* Further, the critical issue is not when the

arrest occurs, but whether there was probable cause to arrest at the time of the search. *Id.* at 223. It is well-settled that as long as the probable cause exists to make the arrest, the fact that a suspect was not formally placed under arrest at the time of the search incident thereto will not invalidate the search. *Id.*

 Probable cause to arrest exists where the officer has knowledge of facts and circumstances that would warrant a man of reasonable caution to believe that a suspect has committed the criminal act in question. *Id.* A police officer's subjective belief as to whether he has probable cause to arrest a defendant has no legal effect. *Id.* Instead, the police officer's actual knowledge of objective facts and circumstances is determinative. *Id.*

In *Underwood v. State,* 644 N.E.2d 108, 110 (Ind.1994), the Indiana Supreme Court reiterated that an officer may make an arrest without a warrant where the officer has knowledge sufficient to rise to the level of probable cause. The facts in *Underwood* established that the defendant, after already committing a series of criminal acts, entered a store and took money from three victims, one of whom was cut by the defendant. *Id.* After the defendant left the store, the victim followed the defendant in his car. *Id.* Eventually, the victim lost sight of the defendant's fleeing vehicle, so the victim drove to the Allen County Jail where he reported what had occurred. *Id.* The victim described the assailant to the officers, who headed in the direction indicated by the victim and found a man matching the defendant's description. *Id.* When the defendant saw the officers, he initially fled but eventually stopped at which time he was arrested and searched. *Id.*

In *Underwood,* the defendant argued that the arrest and search was illegal and

that all evidence seized because of the search should have been suppressed. *Id.* The Indiana Supreme Court disagreed, finding that the officers had probable cause to stop, search, and arrest the defendant because they "had received an ample description of [the suspect] and the general location in which he might be found," and because the suspect had attempted to evade officers upon being found. *Id.*

Similarly, here, Officer Odle was patrolling in the area surrounding the video store when he received a dispatch call reporting a theft of numerous DVDs from the video store. After allowing Breaston to leave the video store, Kirk immediately reported the theft and continued to observe Breaston from the time he left the video store until the time he was approached by Officer Odle, a span of approximately one or two minutes. Kirk provided the dispatcher with a detailed description of the theft suspect's clothes, as well as his whereabouts and actions. The dispatch call notified officers that the suspect was walking away from the video store in Martin's parking lot. Officer Odle immediately entered Martin's parking lot and observed Breaston, who matched the description of the theft suspect. Officer Odle approached Breaston, who seemed very agitated. When Officer Odle told Breaston to calm down, Breaston replied that he had just been asked to leave the video store. Detective Thayer observed the outline of DVD boxes protruding from Breaston's clothing. Officer Odle and Detective Thayer then performed a pat-down search, during which they recovered the DVDs which had been reported stolen by the video store a few minutes before.

We believe that the facts of the instant matter establishing that Officer Odle and Detective Thayer had probable cause to search and arrest Breaston are more compelling than those discussed by the Supreme Court in *Underwood.* Here, Breaston not only matched the description given to the police and was found, within a matter of minutes, in the specific area where Kirk reported he would be, but also was under constant surveillance from the time he left the very video store, which he admitted having just left. In light of this compelling evidence, we conclude that these facts and circumstances were such that a man of reasonable caution would have been warranted to believe that Breaston had committed the criminal act in question and thus provided probable cause for his arrest. *See id.* Therefore, Officer Odle and Detective Thayer had probable cause to arrest Breaston prior to the search of his person. *See id.* Because Officer Odle and Detective Thayer had probable cause to believe that Breaston had committed the theft, their pat-down search was proper as a search incident to arrest and therefore, the trial court did not abuse its discretion in admitting the DVDs into evidence at trial.

## IV. Motion to Dismiss Breaston's Theft Charge

 Finally, Breaston contends that the trial court erred in denying his motion to dismiss the theft charge because the State failed to prove the value of the property in question. Breaston acknowledges that the value of the property is not currently an essential element of Indiana Code section 35–43–4–2(a), but seeks a change in the law so as to incorporate the value of the property as an essential element of the crime of theft. Indiana Code section 35–43–4–2(a) provides the following: "A person who knowingly or intentionally exerts unauthorized control over [the] property of another person, with the

intent to deprive the other person of any part of its value or use, commits theft, a Class D felony."[7]

Indiana Code section 35–43–4–2(a) does not require that the property have any particular value or that a specific value be proven. *Brant v. State*, 535 N.E.2d 189, 190 (Ind.Ct.App.1989); *see also Say v. State*, 623 N.E.2d 427, 428 (Ind.Ct.App. 1993) (providing that there is no requirement that the evidence in a theft case establish that the item, which is the subject of the intended theft, have any particular or specific value; it need only have some value); *Moore v. State*, 178 Ind.App. 95, 100 n. 3, 381 N.E.2d 523, 526 (1978) (providing that the value of the property taken in a theft is not a factor). The legislature has wide latitude in declaring what constitutes a crime, and we believe any change to the definition of a crime should therefore be made by the legislature. *See Worthington v. State*, 409 N.E.2d 1261, 1267 n. 3 (Ind.Ct.App.1980). Thus, we decline Breaston's request to redefine the crime of theft in Indiana, and conclude that the trial court did not err in this regard.

**CONCLUSION**

In sum, we conclude that the trial court did not err in denying Breaston's request for a mistrial, the evidence was sufficient to support the jury's determination that Breaston was a habitual offender, the trial court did not abuse its discretion by allowing the state to amend the habitual offender information prior to trial, the trial court did not err in ordering that Breaston's sentence in the instant matter be served consecutively to his sentence imposed in a prior conviction, the trial court did not err in admitting the DVDs into evidence at trial, and the trial court did not err in denying Breaston's motion to dismiss the instant matter because the State did not allege the specific value of the property in question.

The judgment of the trial court is affirmed.

BARNES, J., and CRONE, J., concur.

---

**7.** To the extent that Breaston claims that Indiana Code section 35–43–4–2(a), as written, is unconstitutional under *Blakely v. Washington*, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403(2004), and *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), we observe that Breaston failed to make a cogent argument in support of this claim, and thus, he has waived this claim on appeal.