William T. SPRINGER, Appellant–
Petitioner,

v.

STATE of Indiana, Appellee–
Respondent.

No. 92A05–1101–PC–16.

Court of Appeals of Indiana.

July 29, 2011.

Transfer Denied Oct. 19, 2011.

Stephen T. Owens, Public Defender of Indiana, Kristen Phair, Deputy Public Defender, Indianapolis, IN, Attorneys for Appellant.

Gregory F. Zoeller, Attorney General of Indiana, Ellen H. Meilaender, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

BROWN, Judge.

William T. Springer appeals the post-conviction court's denial of his petition for post-conviction relief. Springer raises two issues, which we consolidate and restate as whether the post-conviction court erred in denying Springer's petition for relief. We reverse.

The relevant facts follow. On November 2, 2005, Springer broke and entered the business of Ed Tackett with the intent to commit theft. Springer then exerted unauthorized control over Tackett's property with the intent to deprive Tackett of the value and use of the property. That same day, Springer broke and entered a recreational vehicle belonging to Sam Hall and damaged the vehicle. Springer also broke into the residential dwelling of Ray Walker by throwing a brick through a window with the intent to commit theft.

On January 6, 2006, Springer was arrested and incarcerated in the Whitley County Jail. Springer attempted to murder his cellmate by "striking, kicking, and/or choking [his cellmate, and] striking solid surfaces with his head and/or twisting his neck...." Petitioner's Exhibit 1 at 10.

On November 4, 2005, the State charged Springer under cause number 92C01–0511–FB–189 ("Cause No. 189") with attempted burglary as a class B felony, burglary as a class C felony, theft as a class D felony, criminal mischief as a class B misdemeanor, and being an habitual offender.

On January 12, 2006, the State charged Springer with attempted murder under cause number 92C01–0601–FA–6 ("Cause No. 6").

On March 20, 2006, twenty-six-year-old Springer pled guilty as charged[1] under both cause numbers. The plea agreement stated that "the punishment which the law provides for the charge to which [Springer is] pleading guilty is: 36 years—141 years"[2] and capped Springer's sentence at 100 years. Petitioner's Exhibit 6. The plea agreement stated that all sentences under Cause No. 189 would be served concurrent with one another and that the sentence under Cause No. 6 would be served consecutive to the sentence under Cause No. 189. The plea agreement also provided that the State agreed not to file an habitual offender charge under Cause No. 6.

The court held a hearing that day regarding Springer's guilty plea under both cause numbers. At the hearing, Springer's attorney requested a psychiatric evaluation of Springer, and the court granted the request. Two psychiatrists or psychologists examined Springer and did not believe that Springer suffered from a mental disease or defect or insanity.

On May 30, 2006, the court held a consolidated sentencing hearing. Under Cause No. 189, the court found the following aggravators: (1) Springer's criminal history; (2) Springer's history of violating probation; (3) that Springer was on probation at the time of the offenses; (4) that Springer was in need of correctional or rehabilitative treatment; and (5) that Springer was a risk to commit future crimes. The court found the following mitigators: (1) Springer had his G.E.D.; (2) Springer's history of mental illness as a juvenile; (3) Springer's mental health issues; and (4) Springer's acceptance of responsibility by pleading guilty. The court found that the aggravators outweighed the mitigators and sentenced Springer to sixteen years for Count I, attempted burglary as a class B felony. The court ordered that the sentences for Counts II, III, and IV be served concurrent with Count I. The court enhanced the sentence for attempted burglary as a class B felony by twenty years due to his status as an habitual felony offender, for an aggregate sentence under Cause No. 189 of thirty-six years.

Under Cause No. 6, the court found the same mitigators and the same aggravators and also found the fact that "the victim did absolutely nothing to provoke the attack" as an additional aggravator. Petitioner's Exhibit 1 at 24. The court sentenced Springer to fifty years for attempted murder to be served consecutive to the sentences under Cause No. 189 for a total aggregate sentence of eighty-six years.[3]

On March 19, 2007, Springer filed petitions for post-conviction relief under Cause No. 189 and Cause No. 6 alleging that he was denied effective assistance of trial

1. Both parties indicate that Springer pled guilty as charged. The plea agreement states that Springer pled guilty under Cause No. 189 to Count II, burglary as a class B felony, while the charging information alleged Count II as burglary as a class C felony. However, a handwritten notation on the plea agreement appears to change either Count II to a class C felony or Count IV from a class B misdemeanor, which was alleged in the charging information, to a class C misdemeanor.

2. The amount cited as Springer's maximum sentence of 141 years appears to include sentencing Springer as an habitual offender under both Cause No. 189 and Cause No. 6 and ordering those sentences to be served consecutive to each other.

3. The court also revoked Springer's probation under cause number 0109–CF–177 and ordered Springer to serve two years of his suspended sentence consecutive to his sentence of eighty-six years.

counsel and that he did not knowingly, intelligently, or voluntarily enter into his plea agreement. On June 1, 2010, Springer filed an amendment to his petition for post-conviction relief. Springer cited *Breaston v. State*, 907 N.E.2d 992 (Ind. 2009), for the proposition that a trial court could not order consecutive habitual offender sentences.

On August 31, 2010, the court held a hearing on Springer's petitions. At the hearing, Springer's trial counsel testified that he informed Springer that the penal consequences were "anywhere from thirty-six to one hundred forty-one years." Transcript at 6. Springer's counsel stated that he was not aware of the *Breaston* case because it was handed down in 2009, but that he "did read through the cases and [he became] aware the [sic] *Sarks* [*Starks* ] case, the *Smith* case and the *Ingham* [*Ingram* ] case. Each of which was decided before Mr. Springer's case and each of which decided on separate grounds that habitual offender enhancements could not be sentenced consecutively." *Id.* at 14. Springer's counsel also indicated that the maximum sentence Springer could have received under the plea agreement was one hundred years.

During direct examination of Springer, the following exchange occurred:

Q. So why did you plead guilty?

A. I pled guilty because I was pretty much informed that I was going to die in prison, otherwise, and that I was certain that the seriousness of the crimes weren't to the point where I was going to be maxed out on pretty much everything. I wasn't completely maxed out.

Q. Would you have accepted this plea agreement if you had known that you could not have received a hundred and forty-one years?

A. There ain't no way.

Q. If you had known that you could not receive, in fact, a consecutive habitual offender enhancement?

A. Absolutely not.

*Id.* at 15–16.

On September 28, 2010, Springer filed his proposed findings of fact and conclusions of law and cited *Starks v. State*, 523 N.E.2d 735 (Ind.1988), *Ingram v. State*, 761 N.E.2d 883 (Ind.Ct.App.2002), and *Smith v. State*, 774 N.E.2d 1021 (Ind.Ct. App.2002), *trans. denied*, in support of his argument that consecutive habitual offender enhancements were improper. On September 30, 2010, the State filed its proposed findings of fact and conclusions of law and noted that *Breaston v. State*, 907 N.E.2d 992 (Ind.2009), was decided after Springer's guilty plea.

On December 20, 2010, the court denied Springer's petition, stating in its order:

The Court, having heard evidence on August 31, 2010, now makes the following findings of fact and conclusion of law:

1. [Springer] was advised, in writing, that "the punishment which the law provides for the charge to which he was pleading guilty is 36 years— 141 years."

2. [Springer] was advised correctly as to his potential sentence according to the state of the law at the time of his guilty plea.

3. [Springer] cites *Breaston v. State*, 907 N.E.2d 992 (Ind.2009) for the proposition that two HFO enhancements of this type cannot be run consecutively. However, [Springer's] change of plea took place in March of 2006. In March of 2006, the law was not clearly established on this issue.

4. In 2008, the Indiana Court of Appeals found the law to be contrary to that ultimately decided by the Indiana Supreme Court in 2009. In *Breaston v. State,* 893 N.E.2d 6 (Ind.App.2008) the Court found that consecutive HFO enhancements were proper.

5. The Indiana Supreme Court granted transfer and ultimately ruled that the statute did not "expressly authorize multiple habitual offender enhancements to be imposed consecutively." Id. [at] 995.

6. Trial counsel cannot be expected to accurately prognosticate the state of the law three years hence.

7. The advice that trial counsel gave to Mr. Springer was technically correct. Not until 2009, when the Indiana Supreme Court overruled the Court of Appeals and resolved the issue once and for all, could it be said that the advice given was wrong.

8. Mr. Springer's Petition should be denied because the performance of trial counsel was not deficient.

9. The Court is not convinced that had Mr. Springer been advised that the maximum possible penalty was only 111 years, he would have not accepted the plea agreement anyway.

10. It is [Springer's] burden to show that but for his trial counsel's ineffectiveness, he would have taken a different course. He has not met that burden.

11. Because [Springer] was not provided with any information known to be incorrect at the time, and/or because it is not clear whether [Springer] would have pled guilty regardless of whether he was told the maximum possible sentence was 111 or 141 years, the Court now DENIES the Petition for Post–Conviction Relief.

Appellant's Appendix at 72–73.

 Before discussing Springer's allegations of error, we note the general standard under which we review a post-conviction court's denial of a petition for post-conviction relief. The petitioner in a post-conviction proceeding bears the burden of establishing grounds for relief by a preponderance of the evidence. *Fisher v. State,* 810 N.E.2d 674, 679 (Ind.2004); Ind. Post–Conviction Rule 1(5). When appealing from the denial of post-conviction relief, the petitioner stands in the position of one appealing from a negative judgment. *Fisher,* 810 N.E.2d at 679. On review, we will not reverse the judgment unless the evidence as a whole unerringly and unmistakably leads to a conclusion opposite that reached by the post-conviction court. *Id.* Further, the post-conviction court in this case entered findings of fact and conclusions thereon in accordance with Indiana Post–Conviction Rule 1(6). *Id.* "A post-conviction court's findings and judgment will be reversed only upon a showing of clear error—that which leaves us with a definite and firm conviction that a mistake has been made." *Id.* In this review, we accept findings of fact unless clearly erroneous, but we accord no deference to conclusions of law. *Id.* The post-conviction court is the sole judge of the weight of the evidence and the credibility of witnesses. *Id.*

The issue is whether the post-conviction court erred in denying Springer's petition for relief. Springer argues that "[i]n 2006, when Springer pled guilty, the law was clearly established that ... there was no express statutory authorization for imposing consecutive habitual offender enhancements and that they were therefore prohibited." Appellant's Brief at 8 (citing

*Smith,* 774 N.E.2d at 1024). Springer argues that the Court of Appeals decision in *Breaston* "represented a departure from established precedent. . . ." *Id.* at 8–9. Springer argues that "[t]he facts presented to the post conviction court show that Springer was threatened with consecutive habitual offender enhancements and thus threatened with an inaccurate maximum sentencing exposure of 141 years." *Id.* at 6. Springer also argues his trial counsel was ineffective for misadvising him and that his guilty plea was based on an illusory threat and was therefore unknowing, unintelligent, and involuntary. Lastly, Springer argues that the "actual benefit [he] received by pleading guilty was minimal considering the amount of time he faced" and that he received "only 11 years off of a potential 111 year sentence" as a maximum under the plea agreement. *Id.* at 11.

The State argues that Springer's primary concern was "keeping open the possibility that he would live long enough to get out of prison." Appellee's Brief at 8. The State points out that Springer was twenty-six years old at the time of his plea and argues that "[v]iewed from that perspective, there was a significant difference between a possible 111.5–year sentence and a maximum 100–year sentence." *Id.* The State argues that "[a]ssuming good time credit, it is the difference between being released at age seventy-six and not being released until the age of eighty-one." *Id.* The State argues that "[i]t seems fairly clear from the record that [Springer] did not have a realistic chance of being acquitted if he went to trial." *Id.* at 9. The State also argues that "[b]y pleading guilty, [Springer] could—and did—argue his acceptance of responsibility and admission of guilt as a mitigating factor, and the trial court did find this to be a significant mitigating factor." *Id.* at 9–10 (internal citations omitted).

The State does not appear to challenge Springer's argument that consecutive habitual offender enhancements were prohibited at the time of his guilty plea. Rather, the State notes: "Prior to [Springer's] plea, Indiana courts had held that, absent express statutory authority, which had not been found to exist, consecutive habitual offender enhancements were not allowed." *Id.* at 8 (citing *Starks,* 523 N.E.2d at 737; *Smith,* 774 N.E.2d at 1024; and *Ingram,* 761 N.E.2d at 885–886).

In *Smith,* which was handed down prior to Springer's guilty plea, Robert Smith was charged with a number of offenses including being an habitual offender. 774 N.E.2d at 1022. While released on bond pending trial on these charges, Smith committed additional crimes and was charged with a number of offenses including being an habitual offender. *Id.* Smith argued that the post-conviction court erred when it determined consecutive habitual offender enhancements were properly imposed. *Id.* On appeal, the State cited Ind.Code § 35–50–1–2(d) and argued that the trial court was obliged to require that Smith's sentences, including both enhancements, be served consecutively. *Id.* at 1023–1024. We noted the absence of express statutory authorization for imposing multiple habitual offender sentences, whether in a single proceeding or in multiple proceedings. *Id.* at 1024. We concluded that the court "erred when it ordered Smith's habitual offender sentences to run consecutively." *Id.*

In *Breaston v. State,* 893 N.E.2d 6, 15 (Ind.Ct.App.2008), *vacated in relevant part by* 907 N.E.2d 992 (Ind.2009), a panel of this court held that the rationale employed in *Smith* was unable to be reconciled with Ind.Code § 35–50–1–2(d). In its decision in *Breaston,* the Indiana Supreme Court agreed with *Smith* and held that "[u]nder

Indiana law, a trial court cannot order consecutive habitual offender sentences." 907 N.E.2d at 995. The Court also observed that Ind.Code § 35-50-1-2(d) was enacted by the Legislature in 1987, that the statute "was in its present form" when the Court wrote *Starks* in 1988,[4] and that the statute does not expressly authorize multiple habitual offender enhancements to be imposed consecutively. *Id.* Based upon *Smith*, we conclude that Springer was improperly advised that the maximum sentence he faced was 141 years.

██ Generally, "a bargained plea, motivated by an improper threat, is to be deemed illusory and a denial of substantive rights." *Champion v. State*, 478 N.E.2d 681, 683 (Ind.1985) (citing *Gibson v. State*, 456 N.E.2d 1006 (Ind.1983)). "At the moment the plea is entered, the State must possess the power to carry out any threat which was a factor in obtaining the plea agreement which was accepted." *Daniels v. State*, 531 N.E.2d 1173, 1174 (Ind.1988). "The lack of that real power is what makes the threat illusory and causes the representation to take on the characteristics of a trick." *Id.* See also *Nash v. State*, 429 N.E.2d 666, 671 (Ind.Ct.App.1981) (stating that a threat by a prosecutor to do what the law will not permit, if it motivates a defendant ignorant of the impossibility, renders the plea involuntary).

Because Springer was convicted pursuant to a guilty plea, we must analyze his claims under *Segura v. State*, 749 N.E.2d 496 (Ind.2001). In *Segura*, the Indiana Supreme Court held:

Whether viewed as ineffective assistance of counsel or an involuntary plea,

the postconviction court must resolve the factual issue of the materiality of the bad advice in the decision to plead, and postconviction relief may be granted if the plea can be shown to have been influenced by counsel's error. However, if the postconviction court finds that the petitioner would have pleaded guilty even if competently advised as to the penal consequences, the error in advice is immaterial to the decision to plead and there is no prejudice.

749 N.E.2d at 504–505. Thus, it is immaterial whether Springer's claim is characterized as an involuntary plea or ineffective assistance of counsel. See *Willoughby v. State*, 792 N.E.2d 560, 563 (Ind.Ct.App. 2003) (citing *Segura* and holding that it was immaterial whether the petitioner's claim was characterized as an involuntary plea or ineffective assistance of counsel because, under either standard, the petitioner must demonstrate that the intimidation resulting from his trial counsel's failure to inform him of the single larceny rule was material to his decision to plead guilty), *trans. denied.*

*Segura* categorizes two main types of ineffective assistance of counsel cases. *Smith v. State*, 770 N.E.2d 290, 295 (Ind. 2002). The first category relates to "an unutilized defense or failure to mitigate a penalty." *Willoughby*, 792 N.E.2d at 563 (citing *Segura*, 749 N.E.2d at 507). The second category relates to "an improper advisement of penal consequences," and this category has two subcategories: (1) "claims of intimidation by exaggerated penalty or enticement by an understated maximum exposure;" or (2) "claims of in-

---

4. In *Starks*, the Court held:

[I]t is apparent, from a study of the present statutes, that such statutes are silent on the question of whether courts have the authority to require habitual offender sentences to run consecutively, when engaged in the

process of meting out several sentences. In the absence of express statutory authorization for such a tacking of habitual offender sentences, there is none.

523 N.E.2d at 737.

correct advice as to the law." *Id.* (citing *Segura,* 749 N.E.2d at 504–505, 507).

 Springer's claims fall under the second category of an improper advisement of penal consequences. In *Segura,* the Court concluded:

> [I]n order to state a claim for postconviction relief a petitioner may not simply allege that a plea would not have been entered. Nor is the petitioner's conclusory testimony to that effect sufficient to prove prejudice. To state a claim of prejudice from counsel's omission or misdescription of penal consequences that attaches to both a plea and a conviction at trial, the petitioner must allege, in *Hill's* terms, "special circumstances," [5] or, as others have put it, "objective facts" [6] supporting the conclusion that the decision to plead was driven by the erroneous advice.
>
> We believe a showing of prejudice from incorrect advice as to the penal consequences is to be judged by an objective standard, i.e., there must be a showing of facts that support a reasonable probability that the hypothetical reasonable defendant would have elected to go to trial if properly advised. Nevertheless, ... a petitioner may be entitled to relief if there is an objectively credible factual and legal basis from which it may be concluded that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill* [*v. Lockhart,* 474 U.S. 52,] 59, 106 S.Ct. 366 [88 L.Ed.2d 203 (1985)].

> \*　\*　\*　\*　\*　\*

> [F]or claims relating to penal consequences, a petitioner must establish, by objective facts, circumstances that support the conclusion that counsel's errors in advice as to penal consequences were material to the decision to plead. Merely alleging that the petitioner would not have pleaded is insufficient. Rather, specific facts, in addition to the petitioner's conclusory allegation, must establish an objective reasonable probability that competent representation would have caused the petitioner not to enter a plea.

*Segura,* 749 N.E.2d at 507.

 At the post-conviction hearing, Springer did not merely allege that he would not have entered the plea agreement. Rather, Springer indicated that he pled guilty because he believed he would die in prison if he did not plead. Springer, who was twenty-six years old at the time he pled guilty, was advised that he faced the choice of accepting a plea agreement which carried a maximum sentence of 100 years or going to trial with the prospect of receiving sentences totaling 141 years which included the improper consecutive habitual offender sentences. Springer faced a proper maximum sentence of approximately 111 years and thus received a benefit by accepting the plea agreement of approximately eleven years.[7] Under the

---

5. *Hill* [*v. Lockhart,* 474 U.S. 52, 60, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985)].

6. *McCleese v. United States,* 75 F.3d 1174, 1179 (7th Cir.1996); *State v. Donald,* 198 Ariz. 406, 10 P.3d 1193, 1201 (Ct.App.2000)[, *review denied, cert. denied,* 534 U.S. 825, 122 S.Ct. 63, 151 L.Ed.2d 30 (2001)].

7. The maximum sentences for each charge follow: twenty years for attempted burglary as a class B felony; eight years for burglary as a class C felony; three years for theft as a class D felony; six months for criminal mischief as a class B misdemeanor; thirty years enhancement for being an habitual offender; and fifty years for attempted murder as a class A felony. *See* Ind.Code §§ 35–50–2–4 to –8; 35–50–3–3. As previously mentioned, the State argues that the proper maximum sentence was 111.5 years. This calculation is based in part upon the maximum sentence of

circumstances, we conclude that Springer demonstrated at least a reasonable probability that the hypothetical reasonable defendant would have elected to go to trial if properly advised. *See Reeves v. State*, 564 N.E.2d 550, 553 (Ind.Ct.App.1991) (holding that petitioner's plea was involuntary where petitioner was twenty-eight years old at the time he pled guilty and was advised he faced the choice of accepting a plea agreement with a maximum of fifteen years or going to trial with the prospect of receiving a maximum of sixty years when he faced a proper maximum sentence of only thirty years).

For the foregoing reasons, we reverse the post-conviction court's denial of Springer's petition for post-conviction relief.

Reversed.

FRIEDLANDER, J., and BAILEY, J., concur.

180 days for criminal mischief as a class B misdemeanor. *See* Ind.Code § 35–50–3–3. We observe that the trial court sentenced Springer at the sentencing hearing to six months under Count IV which the court characterized as "Criminal Mischief as a class B misdemeanor." Petitioner's Exhibit 1 at 23.

However, the court's sentencing order and abstract of judgment sentenced Springer to sixty days under Count IV which the court characterized as criminal mischief as a class C misdemeanor. The maximum sentence for a class C misdemeanor is sixty days. *See* Ind.Code § 35–50–3–4.