**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Jun 12 2013, 9:00 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEYS FOR APPELLANT:

**STEPHEN T. OWENS**
Public Defender of Indiana

**CORY J. LIGHTNER**
Deputy Public Defender
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**IAN MCLEAN**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| STANLEY B. CRUMBLE a/k/a MELVIN COLEMAN, | ) | |
| Appellant-Petitioner, | ) | |
| vs. | ) | No. 32A01-1211-PC-487 |
| STATE OF INDIANA, | ) | |
| Appellee-Respondent. | ) | |

APPEAL FROM THE HENDRICKS SUPERIOR COURT
The Honorable Robert W. Freese, Judge
Cause No. 32D01-1002-PC-2

**June 12, 2013**

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**BAKER, Judge**

After committing a string of robberies that spanned three counties and resulted in the accumulation of numerous convictions and lengthy imprisonment terms, appellant-petitioner Stanley Crumble now seeks post-conviction relief. Crumble complains that his trial counsel was ineffective because he was misinformed about the possible sentence that he could receive. In a connected argument, Crumble contends that his guilty plea was not voluntary, knowing, and intelligent, because his trial counsel did not properly advise him regarding possible imprisonment terms. Finally, Crumble maintains that the State failed to prove its affirmative defense of laches because he did not unreasonably delay the case, and the State was not prejudiced.

We conclude that Crumble has failed to show that the post-conviction court erred, inasmuch as he mostly directs this Court to his own self-serving and uncorroborated statements coupled with the fact that an objective and reasonable defendant would have pleaded guilty under these facts and circumstances. Moreover, we find that the post-conviction court did not err in determining that the State had established its defense of laches. Accordingly, we affirm.

FACTS

At approximately 9:30 p.m. on November 27, 2002, Crumble entered a Speedway gas station in Hendricks County. Crumble was wearing dark clothing and a stocking cap. Crumble asked for cigarettes, and Candace Kennedy, the attendant, asked Crumble for

2

identification. Crumble became enraged, placed his hand in his pocket, and said, "You know what this is, and you know what I want." Tr. App. p. 40.[1]

Crumble moved to Kennedy's side of the counter and ordered her to open the cash register. When Kennedy explained that she could not open the register without a key, Crumble struck her in the face with his fist causing her to fall to the floor. When Kennedy stood up, Crumble again ordered her to open the cash register; however, because Kennedy did not have the key to open it, Crumble repeatedly hit her in the face nearly knocking her unconscious. After Kennedy had been brutally beaten, Crumble left the store.

Luckily, Chris Snoeberger, a customer, entered the store and called 911 when he found Kennedy "dazed and injured." Tr. App. p. 39. Kennedy did not recall anyone finding her.

Larry Piper was putting gasoline in his vehicle and saw an African-American man exit the store, enter a blue Dodge Neon, and drive west on U.S. Highway 36. Piper relayed this information to the Avon Police Department, who quickly found the Dodge Neon. Crumble led them on a chase during which the Dodge collided with several vehicles before finally coming to a stop.

Crumble was arrested and taken to Wishard Hospital, where it was determined that the wounds on his knuckles were "consistent with . . . punching someone repeatedly

---

[1] The Appendix from Crumble's trial will be cited as Tr. App., and the transcript from his trial will cited as Tr. The Appendix from Crumble's post-conviction proceedings will be cited as PCR App., and the transcript from those proceedings will be cited as PCR Tr.

3

without any type of hand protection." Tr. App. p. 41. Inside the Dodge Neon, the police officers recovered various items including $10, dark clothing, an unsheathed ten-inch hunting knife, a black stocking hat, and eight cartons of Newport cigarettes affixed with orange or white stickers bearing the number "6125." Id. at 39-40.

Police officers returned to the Speedway gas station where they photographed what appeared to be blood on the floor near the attendant's counter. Officers noted empty areas on the shelf where Newport cigarettes were displayed. At the officers' request, store managers inventoried the cigarettes and found that nine cartons of Newport cigarettes were missing. The manager told police officers that the store's identification number, 6125, had been written on either orange or white labels and affixed to the cigarette cartons offered for sale. The photographs and other physical evidence obtained at the scene were taken to the Avon Police Department and stored in the evidence room.

The police officers then traveled to Wishard Hospital and collected fingerprints of the man driving the Dodge Neon. The fingerprints were submitted to Sandy Hurt of the Indianapolis Police Department's[2] (IPD) identification unit. Using IPD resources, Hurt discovered that the fingerprints taken from the driver of the Dodge Neon belonged to Crumble.

Officers obtained a photograph of Crumble and composed a photographic array. The photographic array was shown to Kennedy who identified Crumble as the man who had beaten her.

---

[2] These events occurred before the Indianapolis-Metropolitan Police Department was established on January 1, 2007 by City-County Ordinance 110.

Police officers also obtained a surveillance video from the store. The surveillance video depicted Crumble robbing the Speedway and brutally beating Kennedy.

On December 6, 2002, Crumble was charged with class A felony robbery, class B felony criminal confinement, class C felony battery, and class D felony theft. On February 28, 2003, the State filed a habitual offender enhancement.

Approximately two weeks before Crumble was charged in this case, he had been charged in Marion County under cause number 49G01-0211-FB-277965 (FB-277965) with class B felony attempted robbery, six counts of class B felony robbery, two counts of class C felony robbery, three counts of class B felony confinement, two counts of class D felony confinement, and two counts of class A misdemeanor carrying a handgun without a license. The State had also charged Crumble with being a habitual offender in that case.

On December 13, 2002, Crumble was charged in Marion County under cause number 49G01-0212-FC-300878 (FC-300878) with class C felony robbery. At the time he committed these offenses, Crumble was on probation after serving nine years on four counts of class B felony robbery and two counts of class B felony confinement. Crumble was also facing a theft charge in Bartholomew County.

Mark Smith was appointed to represent Crumble. Smith contacted Crumble's Marion County counsel to discuss those charges. Smith also reviewed Crumble's case and discussed it with Crumble. Smith later testified that it was his practice to review

charges for double jeopardy concerns and that he was "positive that [he] probably did" advise Crumble that he could not be punished for theft and robbery. PCR Tr. p. 6.

After analyzing Crumble's case, Smith was convinced that Crumble had little likelihood of success at trial because, among other things, Kennedy had identified him from the photographic array, and the stolen cigarettes were recovered from Crumble's vehicle.

Originally, the State offered Crumble an open plea to robbery with the stipulation that his sentence would be served consecutively to any sentences in Marion County. Smith, however, negotiated an open plea to robbery in exchange for dismissing the other charges, with no agreement as to whether the resulting sentence would be consecutive or concurrent to Crumble's Marion County sentences. With the exception of the balance of a six-year suspended sentence, Smith believed that any of Crumble's sentences in this case, including the habitual offender enhancement, could be made consecutive or concurrent with any sentence Crumble received in Marion County. Smith's plan was to request that the trial court allow his sentence to run concurrently with Crumble's Marion County sentences to allow him a "reasonable opportunity to have . . . some life after incarceration." PCR Tr. p. 10. If this request was successful, Crumble would be ordered to serve all or at least part of his sentences concurrently with each other.

Crumble accepted the plea agreement on November 14, 2003, and the trial court sentenced him to forty-five years in the Department of Correction (DOC). The court ordered that this sentence be served consecutively to "All Other Cases in Any County."

6

Tr. App. p. 121. Before sentencing, Crumble's probation had been revoked, and Crumble had been ordered to serve the remainder of his six-year suspended sentence.

Crumble received a seventy-year sentence in FB-277965 and a concurrent twenty-year term in FB-291718. In FC-300787, Crumble received eight years in the DOC, and his Bartholomew County charge had not been resolved.

Crumble appealed, and on May 5, 2004, a panel of this Court unanimously affirmed his forty-five-year sentence but remanded with instructions to the trial court to clarify whether the sentence for this offense would have to be served consecutively to any sentence imposed in the Bartholomew County case. Coleman v. State, No. 32A04-0401-CR-56, memo op. at 10 (Ind. Ct. App. 2004).

On February 5, 2010, Crumble filed a petition for post-conviction relief (PCR). As later amended, the petition claimed that Crumble received ineffective assistance of counsel and had entered into an involuntary guilty plea because Smith had not advised him that his habitual-offender enhancement in this case could not be served consecutively to the habitual-offender enhancement pending in Marion County. The State answered, denying Crumble's allegations and raising the affirmative defenses of laches, waiver, and res judicata.

The PCR court heard evidence on August 23, 2012. Crumble testified that Smith had "not really" discussed sentencing outcomes, but "just made me feel like uh, by him saying that I should take a plea that I could probably end up with more time then [sic] what I had." PCR Tr. p. 13. Crumble stated that Smith had reviewed the plea agreement

7

and told him that he should take the plea and that Smith thought he could get a concurrent sentence. Crumble's PCR counsel explained to Crumble that he had calculated a total sentence of "111 years, which would be each sentence, each charge maxed and consecutive" and asked Crumble if he would have pleaded guilty if he had been told that it was impossible for him to have received such a sentence. Id. at 15. Crumble responded that he would not have pleaded guilty under those circumstances.

The PCR court also heard testimony from Detective Stoops, who had investigated the robbery and prepared the affidavit of probable cause. Detective Stoops testified that most of the evidence collected had been placed into storage with the Avon Police Department and destroyed pursuant to departmental policies after the case had concluded. The only remaining pieces of evidence were several photographs of the outside of the Speedway, the stolen cigarette cartons, and Kennedy's injuries. These photographs had not been destroyed, because they had been admitted into evidence at Crumble's sentencing hearing.

Carin Swalley, an investigator with the Hendricks County Prosecutor's Office, stated that she had tried to locate Sandy Hurt by contacting the Indianapolis Metropolitan Police Department (IMPD), but Hurt was no longer employed with the IMPD. Swalley also attempted to contact Larry Piper at his last known address without success.

On October 8, 2012, the PCR court issued its findings of fact and conclusions of law in its order denying Crumble's petition for post-conviction relief. Specifically, the PCR court determined that Smith had not misadvised Crumble because whether habitual

8

offender enhancements imposed in two different counties could be served consecutively was an unsettled question when Crumble pleaded guilty. Moreover, the PCR court opined that even assuming that Smith had misadvised Crumble on this issue, Smith had advised Crumble that any sentence that he received in Hendricks County could be served concurrently with his sentences in Marion County. Indeed, Smith had hoped that because Crumble was pleading guilty, the trial court would impose concurrent terms.

The PCR court further determined that Crumble's testimony amounted to "self-serving, uncorroborated statements" that were insufficient to prove his case. PCR App. p. 109. The PCR court also concluded that "an objective, reasonable defendant would have accepted the plea in hopes of getting a concurrent sentence, independent of any advice received regarding the habitual offender or lesser charges." Id. at 110. Finally, the PCR court determined that Crumble's petition was barred by laches due to the destruction of the State's physical evidence and an inability to locate key witnesses. Crumble now appeals.

## DISCUSSION AND DECISION

### I. Standard of Review

Because post-conviction proceedings are civil proceedings, the petitioner bears the burden of establishing grounds for relief by a preponderance of the evidence. Ben-Yisrayl v. State, 738 N.E.2d 253, 258 (Ind. 2000); see also Ind. Post-Conviction Rule 1(5). Because the PCR court denied relief, Crumble is appealing from a negative judgment and faces the rigorous burden of showing "that the evidence as a whole leads

unerringly and unmistakably to a conclusion opposite to that reached by the [PCR] court." Weatherford v. State, 619 N.E.2d 915, 917 (Ind. 1993).

Post-conviction proceedings do not offer a super-appeal. Wilkes v. State, 984 N.E.2d 1236, 1240 (Ind. 2013). Rather, post-conviction challenges are reserved for those issues not known at the time of trial or not available on direct appeal. Id.

## II. Ineffective Assistance of Trial Counsel

Crumble argues that his trial counsel, Smith, was ineffective for failing to properly advise him regarding the sentence that could actually be imposed. More particularly, Crumble contends that Smith was ineffective for not informing him that consecutive habitual offender enhancements are illegal and that there were double jeopardy violations in the charges against him.

When evaluating a claim of ineffective assistance of counsel, we apply the two-part test articulated in Strickland v. Washington, 466 U.S. 668 (1984). Pinkins v. State, 799 N.E.2d 1079, 1093 (Ind. Ct. App. 2003). First, the petitioner must show that counsel's performance was deficient. Strickland, 466 U.S. at 687. This requires a showing that counsel's representation fell below an objective standard of reasonableness and that the errors were so serious that they resulted in a denial of the right to counsel guaranteed to the defendant by the Sixth and Fourteenth Amendments. Id. Second, the petitioner must show that the deficient performance resulted in prejudice. Id. To establish prejudice, a defendant must show that there is a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been

10

different.  Id. at 694.  A reasonable probability is a probability sufficient to undermine confidence in the outcome.  Id.  If a claim of ineffective assistance can be disposed of by analyzing the prejudice prong alone, we will do so.  Wentz v. State, 766 N.E.2d 351, 360 (Ind. 2002).

Here, Smith did not testify that he advised Crumble that he was facing consecutive habitual offender enhancements.  To the contrary, Smith testified that his strategy was to convince the trial court to run Crumble's sentence concurrently with his Marion County sentences.  PCR Tr. p 7-8.  And Crumble's self-serving, uncorroborated statements are insufficient to overcome his burden of proving ineffective assistance of counsel.  Graham v. State, 941 N.E.2d 1091, 1103 (Ind. Ct. App. 2011).

As for the asserted double jeopardy violations, Smith testified that it was a normal part of his practice to review charges for double jeopardy issues and that he had probably done so in Crumble's case.  PCR Tr. p. 6.  In light of this testimony and the strong presumption that counsel rendered adequate assistance, this argument must also fail.  See Timberlake v. State, 753 N.E.2d 591, 603 (Ind. 2001).

### III. Involuntary Guilty Plea

In a related argument, Crumble argues that because he relied on Smith's incorrect advice, his guilty plea was not knowing, intelligent, and voluntary.  Whether a guilty plea is entered into voluntarily is dependent upon whether the defendant knowingly and freely entered into the plea.  Cornelious v. State, 846 N.E.2d 354, 358 (Ind. Ct. App. 2006).

A guilty plea that was motivated by an improper threat is deemed illusory and a

11

denial of substantive rights. Daniels v. State, 531 N.E.2d 1173, 1174 (Ind. 1988). And an illusory plea is not a voluntary plea. Reeves v. State, 564 N.E.2d 550, 553 (Ind. Ct. App. 1991).

Nevertheless, a petitioner is not entitled to relief by simply testifying that he would not have entered into the guilty plea. Springer v. State, 952 N.E.2d 799, 806 (Ind. Ct. App. 2011), trans. denied. Rather, to prove prejudice from counsel's omission or mistaken advice as to the penal consequences, the petitioner must allege objective facts that support the conclusion that the decision to plead guilty was motivated by the erroneous advice. Id. Put another way, there must be a reasonable probability that but for counsel's errors, the petitioner would not have pleaded guilty and would have proceeded to trial. Id.

Again, Crumble asserts that "he was misadvised as to the amount of time he was facing." Appellant's Br. p. 14. Much like Crumble's arguments that Smith was ineffective, these statements are merely self-serving and uncorroborated.

As stated above, Smith's strategy was for Crumble to plead guilty and to argue for concurrent sentences so that Crumble would have some kind of life after incarceration. PCR Tr. p. 10. In making this decision, Smith reviewed the evidence against Crumble, including the surveillance video, eyewitness identifications, and the stolen property recovered from Crumble's vehicle. Id. at 7.

Indeed, Crumble received a benefit from pleading guilty even if it was small. Smith's strategy was successful, inasmuch as it reduced Crumble's sentence by five

12

years. And the fact that Smith's strategy was not as successful as Crumble or even Smith had hoped does not render Crumble's guilty plea involuntary. Under these facts and circumstances, we cannot conclude that the PCR court erred when it concluded that "an objective, reasonable defendant would have accepted the plea in hopes of getting a concurrent sentence, independent of any advice received regarding the habitual offender enhancement or lesser charges." PCR App. p. 110. Accordingly, Crumble has failed to convince us that his guilty plea was not voluntary, knowing, and intelligent.

## IV. Laches

Finally, Crumble maintains that the PCR court erred by determining that the State proved its laches defense by a preponderance of the evidence. This Court will affirm the PCR court unless its judgment was clearly erroneous. Armstrong v. State, 747 N.E.2d 1119, 1120 (Ind. 2001).

To establish the defense of laches, there are two elements that must be proved. First, the petitioner delayed seeking relief, and second, the State was prejudiced by the delay. Perry v. State, 512 N.E.2d 841, 843 (Ind. 1987). A petitioner's knowledge of the means for relief and unreasonable delay may be inferred from circumstantial evidence such as "[r]epeated contacts with the criminal justice system, consultation with attorneys and incarceration in a penal institution with legal facilities . . . ." Id. at 845. "[P]rejudice exists when the unreasonable delay operates to materially diminish a reasonable likelihood of successful re-prosecution." Kirby v. State, 822 N.E.2d 1097, 1100 (Ind. Ct. App. 2005).

13

In this case, Crumble pleaded guilty on November 14, 2003. Tr. App. p. 87. Crumble's sentence was affirmed on May 5, 2004. Coleman, memo op. at 1. Further, Crumble had a lengthy history with the criminal justice system before he pleaded guilty in this case. Tr. App. p. 96. And, on June 16, 2004, Crumble filed a PCR petition in FB-277965. During that time, Crumble consulted with at least two attorneys: Smith and his counsel representing him in his PCR proceedings. Still, Crumble waited over five years, until February 5, 2010, to seek post-conviction relief in this case.

Furthermore, most of the physical evidence has been destroyed. PCR Tr. p. 17-18. For example, if Crumble was re-prosecuted, the State would not be able to introduce the surveillance tape, which fully depicted Crumble's robbery and numerous blows to Kennedy's face. Id. Additionally, the State could not introduce the cartons of labeled cigarettes that Crumble had stolen or the knife found in his vehicle. Id. Even the fingerprint evidence would be unavailable. Id.

Moreover, Hurt, who made the fingerprint comparison, is no longer employed by the IMPD. Id. at 20. Likewise, Piper, the eyewitness who saw Crumble flee from the Speedway after the robbery could not be located. Id. at 21. At best, the State's case would be confined to the photographs of the cigarettes and the knife. Id. at 17-18. Under these circumstances, we cannot say that the PCR court's conclusion that there was unreasonable delay and resulting prejudice was clearly erroneous and not supported by substantial evidence. Therefore, this argument also fails.

14

The judgment of the PCR court is affirmed.

MAY, J., and MATHIAS, J., concur.