**Wayne Anthony MULL, Appellant (Defendant Below),**

v.

**STATE of Indiana, Appellee (Plaintiff Below).**

No. 89S00–0012–CR–747.

Supreme Court of Indiana.

June 25, 2002.

Jess M. Smith, III, Centerville, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Arthur Thaddeus Perry, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

BOEHM, Justice.

Wayne Mull pleaded guilty to murder and was sentenced to life without parole after a penalty phase tried to the court. In this direct appeal, Mull contends that the trial court erred by: (1) admitting testimony of two witnesses; (2) finding that the State proved beyond a reasonable doubt that the murder was committed by intentionally killing the victim during the commission of a burglary and attempted rape; and (3) finding that the mitigating circumstances are outweighed by the aggravating circumstances. We affirm.

## Factual and Procedural Background

On July 4, 1994, Mindy Mull was found dead in her upstairs apartment. Her hands and feet were bound and her naked body was tied to a radiator. The apartment door was splintered, tool marks were found around the lock of the door, and the strike plate on the door jamb was missing a screw.

Wayne Mull, who was not related to the victim, was a tenant in a downstairs apartment of the building. After first denying any involvement, Wayne confessed to murdering Mindy. According to his confession, Wayne knocked on the door and was admitted by Mindy. He stated that the two "were holding each other and talking [and] one thing led to another." At some point, Mindy told him to stop and struck him when he pursued his advances. He then "lost control," stabbed her with a pair of scissors, pulled her into the kitchen by her hands, tied her to the radiator with a phone cord, and "took off." The State initially charged Wayne with murder, attempted rape, criminal confinement, and burglary. Wayne then pleaded guilty to murder in exchange for dismissal of all other counts. The plea agreement allowed both parties to argue for penalties within

the applicable statutory limitations, including life imprisonment without parole.

On September 7, 1995, the trial court sentenced Wayne to life imprisonment without parole. Wayne's trial counsel was appointed to represent him on appeal, and although a praecipe was filed in October 1995, no appellate brief was timely filed. In January 2001, after this Court granted a petition to file a belated appeal and removed Wayne's trial counsel as appellate attorney, the trial court appointed new counsel. After Wayne filed his appellate brief in March 2001, the State moved to remand conceding that the trial court's sentencing order did not meet the requirements for an order imposing life without parole. *See Ajabu v. State*, 693 N.E.2d 921, 940 n. 24 (Ind.1998) (life without parole is subject to death penalty sentencing and requirements); *Harrison v. State*, 644 N.E.2d 1243, 1262 (Ind.1995) (setting forth death penalty sentence requirements). This Court granted the motion to remand for entry of a new sentencing order. The trial court then entered a renewed sentencing order and reaffirmed the sentence of life imprisonment without parole.

### I. Admitting Witness Testimony

Wayne argues that the court erred in considering the penalty phase testimony of Angela Pierson and Melissa Jo Loudy. Over Wayne's objections, Pierson, Mindy's roommate, testified that Mindy thought Wayne was "strange." Loudy, another of Mindy's friends, testified that Mindy had described Wayne as "weird" and complained that Wayne would "always watch her and always know where she was going or what she was doing [and] always stop her by the door and just sit and make

conversation with her and she didn't really want to talk to him." The trial court admitted this testimony under Indiana Evidence Rule 803(3).[1] That rule provides an exception to the hearsay rule for "[a] statement of the declarant's then existing state of mind, emotion, sensation, or physical condition (such as intent, plan, motive, design, mental feeling, pain and bodily health). . . ." Relying on *Komyatti v. State*, 490 N.E.2d 279 (Ind.1986), Wayne argues that this was error because the victim's state of mind prior to the murder was irrelevant. He contends that comments made by the victim at some unknown point in time prior to the crime had no relevance to the charged aggravated circumstances, which were that the defendant intentionally killed the victim in the course of both a burglary and an attempted rape. He further argues that at the time these statements were admitted, Wayne had not placed the victim's state of mind at issue.

■ Hearsay is "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Ind. Evidence Rule 801(c). Here, the testimony that Mindy viewed Wayne as "strange" or "weird" was not offered to prove that he was in fact strange or weird. Similarly, Loudy's testimony that Mindy complained about Wayne's watching her and his repeated attempts to engage her in conversation was not offered to prove that these events occurred. Rather, this evidence was offered to prove that Mindy did not consensually admit Wayne into her apartment or voluntarily have sexual intercourse with him.

---

1. Defense counsel objected stating the testimony was hearsay and irrelevant. In overruling the objection to Loudy's testimony, the trial court indicated that it was an exception to the hearsay rule based on Rule 803(3) and relevant as to whether there was consensual sexual activity. In overruling Pierson's testimony, no explanation was given, but defense counsel objected on the same basis as he had objected to Loudy's testimony.

■ We believe the trial court correctly found this evidence to be relevant. Wayne placed Mindy's state of mind in issue by claiming that the sexual activity was consensual. Moreover, defense counsel placed the victim's state of mind in issue by cross-examining the detective as to Wayne's claim that the victim admitted Wayne to her apartment. Mindy's recently expressed opinions of Wayne make it less likely that she would either have admitted him to her apartment or engaged in consensual sex with him.

## II. Intent to Commit Burglary and Attempted Rape Were Proven Beyond Reasonable Doubt

Before a defendant can be sentenced to life imprisonment without parole for murder, the State must prove beyond a reasonable doubt the existence of at least one aggravating circumstance listed in Indiana Code section 35–50–2–9(b). Here, the trial court found, beyond reasonable doubt, that Wayne intentionally killed Mindy while committing burglary and attempted rape. Wayne argues that the trial court could not find either of these aggravating circumstances beyond a reasonable doubt.

■ Here, the trial court found an intentional killing in the commission of an attempted rape. Indiana Code section 35–42–4–1 states that "a person who knowingly or intentionally has sexual intercourse with a member of the opposite sex when ... the other person is compelled by force or imminent threat of force" commits rape. Indiana Code section 35–41–5–1 defines attempt in relevant part: "A person attempts to commit a crime when, acting with the culpability required for the commission of the crime, he engages in conduct that constitutes a substantial step toward commission of the crime." Wayne argues that although he admitted that he continued to try to have intercourse with Mindy after she told him to stop, there was no evidence that this occurred by use of force or the imminent threat of force.

Mindy was found naked, bound hand and foot, and tied to a radiator in the kitchen of her apartment. She was lying in a pool of blood with a blood-soaked blanket beneath her and a pillow at her head. On the pillow was a bloody pair of scissors. The autopsy revealed that Mindy had black eyes (bleeding around and in the eyes), abrasions to her nose and left cheek, contusions and abrasions of her knuckles. There were abrasions on her knees, ligature marks on her wrists and ankles from being tightly bound. On the upper back, at the base of her neck, there was a large area of bruising indicating she had been struck there at least twice. On her leg were contusions corresponding to the configuration of the radiator to which she was tied, indicating that she struggled against the radiator. The cause of her death was a severed carotid artery that, according to the forensic pathologist, would have caused her to bleed to death within a minute or two of receiving the fatal stab wounds. A detective testified that he observed scratches on the defendant within two days of the murder. A forensic DNA analyst testified that the two blood stains on a blouse found in the victim's apartment contained DNA consistent with both Wayne's and Mindy's. Another forensic expert testified that pubic hairs similar to Wayne's sample were found on the victim and in various places in the victim's apartment. This is more than enough evidence to support the trial court's finding that Wayne intentionally killed Mindy during the commission of attempted rape.

■ Wayne next contends that the trial court erred in finding that he intentionally murdered the victim while committing burglary. Burglary is breaking and entering

with intent to commit a felony. I.C. § 35–43–2–1. Wayne argues that the victim let him into the apartment after he knocked on the door and his intent to commit a felony only arose after Mindy hit him. He points out that the State never recovered any tool or instrument that was allegedly used to cause damage to the door. He also contends that Mindy's roommate failed to notice any damage to the door when she returned to the apartment immediately before finding the victim.

Mindy's friends testified that Mindy thought Wayne was "strange" and "weird" and would not be allowed into the apartment alone. There was fresh damage to the door and door jamb. The landlord testified that he replaced the locks on the apartment when Mindy and her roommate moved in about three weeks before the murder, and the roommate was certain that the door was not damaged when she left the apartment the day before she found Mindy's body. Once in the apartment, the evidence of multiple felonies including confinement and battery is obvious.

█ The second amended information charged burglary with intent to commit rape. The aggravating circumstance charged was burglary without specifying the intended felony underlying the burglary. Assuming without deciding that the felony supporting the burglary in the aggravating factor must be the same as the felony underlying the burglary charged in the initial information, the trial court found attempted rape, so the intent to commit the charged felony of rape underlying the burglary charge may be inferred. This is another application of the general doctrine that one may infer the intent at the time of entry from the fact of subsequent commission of a felony. *See Gee v. State,* 526 N.E.2d 1152, 1154 (Ind.1988) (stating that a jury can infer from the surrounding cir-

cumstances whether a defendant entered a structure with the intent to commit the felony charged therein); *Jewell v. State,* 672 N.E.2d 417, 427 (Ind.Ct.App.1996), *trans. denied* (holding that "[a]lthough the fact of breaking and entering is not itself sufficient to prove entry was made with the intent to commit the felony, such intent may be inferred from subsequent conduct of the defendant inside the premises"). If credited, this evidence of breaking and entering and intent to commit a felony seems more than clear. Credibility is for the trial court. Accordingly, the finding of this aggravating circumstance is affirmed.

### III. Aggravating Circumstances Outweigh Mitigating Circumstances

Wayne contends that the trial court's imposition of life imprisonment without parole was based upon an erroneous finding that the aggravating circumstances outweighed the mitigating circumstances. The trial court found two aggravating circumstances: Wayne committed the murder by intentionally killing the victim while committing burglary and also while attempting to commit rape. The trial court explicitly found four mitigating circumstances—remorse, guilty plea, mental health issues, and developmental history—but nevertheless concluded that "the aggravating circumstances together and independently outweigh the mitigating circumstances."

█ Citing *Trueblood v. State,* 715 N.E.2d 1242 (Ind.1999), Wayne contends that his guilty plea should have been recognized as a significant mitigating circumstance. He argues that the plea prevented the necessity of a lengthy jury trial and points out that the trial court previously commented that his plea resolved matters prior to the sentencing hearing, including the State's necessity to develop a chain of

custody for the evidence. In its Sentencing Order, the trial court acknowledged that guilty pleas are usually accorded significant weight as a mitigating circumstance, but concluded that, in this case, it constituted minimal mitigation. The trial court pointed out that the State was forced to try most of its case in order to prove the aggravating factors. Given the confession and the physical evidence, conviction of murder seems inevitable. "A guilty plea is not automatically a significant mitigating factor." *Sensback v. State*, 720 N.E.2d 1160, 1165 (Ind.1999); *see also Davies v. State*, 758 N.E.2d 981, 987 (Ind.Ct.App. 2001), *trans. denied* (affirming the trial court's refusal to find defendant's guilty plea as a mitigating circumstance when the record indicated that the plea was "more likely the result of pragmatism than acceptance of responsibility and remorse"). Under these circumstances, we do not believe the court abused its discretion in according only minimal weight to Wayne's guilty plea.

■ Wayne also contends that two statutory mitigating circumstances under Indiana Code section 35–50–2–9(c)(2) and (6) were erroneously rejected by the trial court.[2] Specifically, he argues that the testimony of Dr. Gregory Karch, the defense psychologist, demonstrated the existence of emotional disturbance when the murder was committed and mental disease or intoxication. He directs us to no authority for this contention. The trial court considered the testimony of Dr. Karch, but did not find the statutory mitigating circumstance of "*extreme* mental or emotional disturbance *when the murder was committed.*" I.C. § 35–50–2–9(c)(2) (emphasis added). The trial court similarly declined to find Wayne's condition sufficiently severe to impair his "capacity to appreciate the criminality of [his] conduct or to conform that conduct to the requirements of law," as specified by Indiana Code section 35–50–2–9(c)(6). The trial court noted Wayne's mental and emotional limitations.[3] Wayne points to no error in these findings. Rather, he challenges the balancing struck by the trial court. We cannot say that the trial court's evaluation of the weight accorded these specifically found facts was an abuse of discretion.

■ Wayne also argues that the trial court, after reviewing the pre-sentence report, should have found defendant's lack of violent criminal history constituted a mitigating circumstance under section 35–50–2–9(c)(1) or (8).[4] Wayne had been convicted of criminal conversion and theft, and had violated probation. Although these

---

**2.** Section (c)(2) provides for the mitigating circumstance that "[t]he defendant was under the influence of extreme mental or emotional disturbance when the murder was committed." Section (c)(6) provides for the mitigating circumstance that "[t]he defendant's capacity to appreciate the criminality of the defendant's conduct or to conform that conduct to the requirements of law was substantially impaired as a result of mental disease or defect or of intoxication."

**3.** The trial court stated in its sentencing order, "The defense's psychologist, Dr. Gregory Karch, testified regarding the defendant's intellectual, emotional, social, and psychological characteristics which include borderline personality disorder, alcohol dependence, impulsiveness, immaturity, depression, disassociation, difficulty in decision making, impaired memory skills, disengagement, impoverishment of self interest and low intelligence." The court concluded that "[t]he defendant's mental and emotional defects constitute minimal mitigation."

**4.** Section (c)(1) provides for the mitigating factor that "[t]he defendant has no significant history of prior criminal conduct." Section (c)(8) permits the jury or judge to consider "[a]ny other circumstances appropriate for consideration."

crimes were not violent in nature, section (c)(1) refers to "criminal history," not the absence of "violent criminal behavior."

## Conclusion

The sentencing order of the trial court is affirmed.

SHEPARD, C.J., and DICKSON, SULLIVAN and RUCKER, JJ., concur.