Jerome S. **GENTRY**, Appellant–
Defendant,

v.

**STATE of Indiana**, Appellee–Plaintiff.

No. 03A01–0501–CR–15.

Court of Appeals of Indiana.

Oct. 13, 2005.

Eugene C. Hollander, Indianapolis, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Richard C. Webster, Deputy At-

torney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

MATHIAS, Judge.

Jerome S. Gentry ("Gentry") was convicted in Bartholomew Superior Court of Class B felony burglary.[1] The court sentenced Gentry to fifteen years, enhanced by twenty years for being an habitual offender,[2] for a total sentence length of thirty-five years. Gentry raises three issues on appeal, which we restate as follows:

I. Whether the evidence is sufficient to support Gentry's burglary and habitual offender convictions;

II. Whether Gentry's sentence is proper and appropriate; and,

III. Whether the trial court erred when it gave Final Instruction 10 to the jury.

Concluding that his burglary and habitual offender convictions are supported by sufficient evidence, that the trial court properly relied on certain aggravating circumstances, and that Gentry has waived any objection to Final Instruction 10, we affirm.

### Facts and Procedural History

On October 29, 2003, Gentry and his wife, Leslie, moved into the upstairs apartment of a two-story home owned by Judy Kiesow ("Kiesow"). Kiesow lived in the bottom unit of the home. Upon moving in, Gentry and his wife were given two keys; one key was used for the front door of the house, and the other key was used for the front door of their apartment. Tr. pp. 166–69. Kiesow acknowledged that it is possible that she inadvertently gave Gentry a master key which opened all three doors of the house instead of just the front door. Tr. p. 169. The door locks were self-activating and would lock when the door was shut.

Kiesow took three different types of medication each night. She took one pill each from three separate bottles, which were kept next to the bed in the night-stand drawer. She had established a habit of taking the pills immediately before she went to sleep each night. Tr. pp. 172–73. One of Kiesow's medications was the prescription narcotic hydrocodone, which she took for arthritis.

In January, 2004, Kiesow noticed that her prescription for hydrocodone seemed to be diminishing more quickly than usual. On a Sunday, January 19, she noticed that she only had three pills remaining. The following day, the remaining hydrocodone pills were missing. Tr. p. 174. After consulting with her pharmacist, she realized that of the thirty hydrocodone pills received in her most recent prescription, she had only taken five. Someone had taken the remaining twenty-five pills. Tr. p. 175. Kiesow looked, but there were no signs of forced entry into her apartment. Tr. p. 178.

Kiesow contacted the Columbus Police Department regarding her suspicion that someone was entering her apartment without her permission and stealing her hydrocodone pills. At her request, the police immediately set up a surveillance camera in Kiesow's bedroom to monitor the area while she was away. The camera resembled a clock radio and was placed on a bookcase at the end of Kiesow's bed. It was aimed at the night-stand. Columbus Police Lieutenant Trisler ("Lieutenant Trisler") placed Kiesow's empty hydrocodone bottle with the label up in the near right corner of the drawer, and placed a

---

1. Ind.Code § 35–43–2–1 (2004).

2. Ind.Code § 35–50–2–8 (2004).

toothpick under the drawer in such a way that it would fall out onto the carpet if the drawer was opened. Tr. pp. 184, 203–04. Kiesow put a piece of scotch tape on her front apartment door in such a way that if it was opened, the tape would wrap around the door and she would know that someone had entered her apartment through that door.

The day after the surveillance camera had been installed, Kiesow activated the recorder before she left for work. When she returned home that night she observed that the tape was off the front door and the toothpick was lying on the bedroom carpet. Tr. p. 188. She opened the night-stand drawer and observed that the hydrocodone bottle had been moved. Kiesow informed Lieutenant Trisler of her discoveries. The surveillance camera's videotape revealed an individual, later identified as Gentry, coming through the bedroom door, walking directly to the night-stand, opening the drawer and picking up the hydrocodone bottle. The individual looked at the empty bottle, put it back in the drawer, closed the drawer and left the room. Tr. pp. 189–91, 210–11; Ex. Vol., State's Exs. 1, 2. A short time later, the same individual returned, briefly opened the drawer to the nightstand and then left. Kiesow had never discussed her medication or its location with Gentry, and to her knowledge, he had never been inside her apartment beyond just inside the front door. Tr. pp. 178–79.

That night, Gentry was questioned by Columbus Police Department Detective Thomas Watts ("Detective Watts"). Gentry was wearing the same shirt that the individual in the videotape was wearing, and the same hat was sitting on Gentry's coffee table. Detective Watts interviewed Gentry at the police station. After viewing the recording from the surveillance camera, Gentry admitted that he was the individual in the videotape. Tr. pp. 211–12.

Gentry was charged with Class B felony burglary. A jury convicted him as charged, and also convicted him of being an habitual offender. Appellant's App. p. 48. The trial court found Gentry's extensive criminal history as an aggravating circumstance, in addition to Gentry's failure to rehabilitate. Gentry was sentenced to incarceration for fifteen years upon his conviction of Class B felony burglary, and his sentence was enhanced by twenty years for being an habitual offender, for a total sentence of thirty-five years. *Id.*

## I. Sufficiency of the Evidence

Our standard of review for sufficiency claims is well settled. We neither reweigh the evidence nor judge the credibility of the witnesses. *Cox v. State*, 774 N.E.2d 1025, 1029 (Ind.Ct.App.2002). We only consider the evidence most favorable to the verdict and the reasonable inferences that can be drawn therefrom. *Id.* Where there is substantial evidence of probative value to support the verdict, it will not be disturbed. *Armour v. State*, 762 N.E.2d 208, 215 (Ind.Ct.App.2002), *trans. denied.*

### A. *Burglary*

Gentry was charged with Class B felony burglary by information that states, in relevant part, as follows:

> [O]n or about January 27, 2004 in Bartholomew County, State of Indiana, the defendant, Jerome S. Gentry did break and enter the dwelling of Judy Kiesow, with the intent to commit a felony therein, to-wit: theft.

Appellant's App. p. 7. To establish that Gentry committed the offense of Class B felony burglary, the State was required to prove that Gentry did knowingly or intentionally break into and enter Kiesow's apartment with the intent to commit theft.

*See* Ind.Code § 35–43–2–1 (2004); *See also*, Ind.Code § 35–43–4–2(a) (defining theft as the knowing or intentional exertion of unauthorized control over property of another person with intent to deprive that person of any part of its value or use).

 Intent to commit a felony in a burglary case may be inferred from the circumstantial evidence of the nature of the crime. *Webster v. State*, 708 N.E.2d 610, 615 (Ind.Ct.App.1999), *trans. denied.* Such intent may be inferred from a defendant's subsequent conduct inside the premises. *Mull v. State*, 770 N.E.2d 308, 313 (Ind.2002). Additionally, intent may be inferred from the time, force and manner of entry where there is no evidence that the entry was made with some lawful intent. *Gray v. State*, 797 N.E.2d 333, 336 (Ind.Ct.App.2003). "[I]ntent may not be inferred from mere proof of breaking and entering alone." *Desloover v. State*, 734 N.E.2d 633, 634 (Ind.Ct.App.2000). However, the intent element is satisfied so long as there is a solid basis for a reasonable inference to be made that the defendant had the intent to commit the felony of theft. *Id.* at 635.

 Here, the evidence clearly establishes that Gentry entered Kiesow's bedroom sometime during the day of Tuesday, January 27, 2004. He walked straight to the night-stand, opened the top drawer where Kiesow kept her hydrocodone, picked up the bottle, looked at it, and put it back in the drawer. Gentry left the bedroom, but returned a short time later to look into the drawer once again. Kiesow had never discussed her medication with Gentry, and, to her knowledge, Gentry had never been in her bedroom. Viewing this evidence in the light most favorable to the verdict, we conclude there was

sufficient evidence to support Gentry's Class B felony burglary conviction.

## B. *Habitual Offender*

 Gentry was also charged with being an habitual offender by information that states, in relevant part:

> [P]rior to January 27, 2004 Jerome S. Gentry had accumulated at least two prior unrelated felony convictions, to wit:
>
> 1. On or about August 28, 1989, in the Bartholomew Superior Court 1, the defendant was convicted of Burglary, a Class C felony, under cause number 03D01–8901–CF–41, said offense had been committed on or about January 23, 1989; and
>
> 2. On or about August 1, 2000, in the Bartholomew Superior Court 1, the defendant was convicted of Attempted Burglary, a Class C felony, under cause number 03D01–0003–CF–322, said offense having been committed on or about October 24, 1999.

Appellant's App. p. 35. To establish that Gentry is an habitual offender, the State must have proved beyond a reasonable doubt that he has been convicted of two separate and unrelated felonies. *See* Ind. Code § 35–50–2–8(d) (1998); *Toney v. State*, 715 N.E.2d 367, 369 (citing *Jackson v. State*, 546 N.E.2d 846 (Ind.1989)). "The commission of the second felony must be subsequent to the sentencing of the first and the sentencing for the second felony must precede the commission of the principal felony for which the enhanced sentence is being sought." *Toney*, 715 N.E.2d at 369 (citing *Webster v. State*, 628 N.E.2d 1212 (Ind.1994)).

 Here, the evidence clearly demonstrates that Gentry was convicted of attempted burglary, a Class C felony, on August 1, 2000.[3] The State presented

3. State's Exhibit 5, an information filed in Bartholomew Superior Court, states that Je-

Prosecutor Gregory Long ("Long") to support this conviction. Gentry contends, however, that the evidence used to connect him to the August 28, 1989, burglary conviction was insufficient. Gentry points to the fact that Long was not the prosecutor in the 1989 conviction, and had merely testified that he had listened to the separate and unrelated subsequent sentencing hearing which had been conducted on August 1, 2000. The transcript of that sentencing hearing was not placed into evidence, and the actual recording was not played for the jury.

In *Toney*, our supreme court addressed the sufficiency of the evidence regarding an habitual offender conviction, in which the State's evidence included an arrest report for the prior offense that contained the same name, birth date and social security number as the defendant in the underlying action. In *Toney*, the court stated the "report clearly demonstrates that the individual detailed in the document and the appellant in this case are the same." *Id.* at 370, n. 8. There, the evidence was sufficient to support the defendant's habitual offender enhancement.

At trial for the underlying charge in this case, Gentry's date of birth and social security number were established, and the State moved to incorporate the trial proceeding at the beginning of the habitual offender hearing. The trial court granted the State's request. Tr. pp. 223, 269; State's Ex. 2. Gentry's date of birth and social security number matched those listed for Jerome S. Gentry on the charging information of State's Exhibit 4, which was the 1989 burglary conviction, as well as the

charging information contained in State's Exhibit 5, the attempted burglary conviction of 2000. A reasonable jury could certainly find that the matching names, dates of birth and social security numbers were sufficient to prove that the individual discussed in the documents was the present appellant. Under these facts and circumstances, we conclude there was sufficient evidence to support Gentry's habitual offender enhancement.

## II. Gentry's Sentence

### A. *Application of Blakely*

Next, Gentry contends that his fifteen-year sentence, enhanced by twenty years for his habitual offender status, is improper because the trial court relied upon aggravating circumstances that were not supported by jury findings.[4] In *Blakely v. Washington*, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004), the United States Supreme Court held, "other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." 124 S.Ct. at 2536 (quoting *Apprendi v. New Jersey*, 530 U.S. 466, 490, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000)). "The 'statutory maximum' for *Apprendi* purposes is the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant." *Id.* at 2537.

The trial court found the following aggravating circumstances: Gentry's failure to rehabilitate and his criminal history, including his tendency to enter Kiesow's

---

rome S. Gentry, with the same birth date and social security number, was charged and convicted of attempted burglary. Ex. Vol. 1, Ex. 5.

**4.** "A person who commits a Class B felony shall be imprisoned for a fixed term of ten

(10) years, with not more than ten (10) years added for aggravating circumstances or not more than four (4) years subtracted for mitigating circumstances." *See* Ind.Code § 35–50–2–5 (2004).

dwelling.[5] Gentry challenges these aggravators under *Blakely*.

■ Recently, our supreme court considered a *Blakely* challenge to the "failure to rehabilitate" aggravator. In *Morgan v. State,* the court held that observations a court makes about facts admitted by the defendant or found by a jury "may reflect on the weight of acknowledged facts or prior convictions but are not themselves separate aggravators." 829 N.E.2d 12, 14, 17 (Ind.2005) ("We conclude that such statements, which our Court of Appeals has called 'derivative' of criminal history, are legitimate observations about the weight to be given to facts appropriately noted by a judge alone under *Blakely.* They cannot serve as separate aggravating circumstances.").[6] Under *Morgan,* we conclude that the aggravating circumstance that Gentry failed to rehabilitate should not have been considered as a separate aggravating circumstance. However, such a statement is a legitimate observation about the weight to be given to Gentry's criminal history and does not warrant modification of his sentence.

■ With respect to a court's use of a defendant's criminal history as an aggravating circumstance, our law is well settled. In *Morgan,* our supreme court observed that "[w]hile there are many instances in which a single aggravator is enough, this does not mean that sentencing judges or appellate judges need do no thinking about what weight to give a history of prior convictions." 829 N.E.2d at 15. "This weight is measured by the number of prior convictions and their seriousness, by their proximity or distance from the present offense, and by any similarity or dissimilarity to the present offense that might reflect on a defendant's culpability." *Id.*

Gentry has two prior convictions: Class C felony burglary and Class C felony attempted burglary. These convictions resulted from charges filed on January 25, 1989, and May 31, 2000, respectively. The offense in this case, Class B felony burglary, was committed on or about January 27, 2004. Gentry's offenses display a repeated pattern of burglary or attempted burglary, spread throughout a 15-year period. The trial court did not find any mitigating circumstances to weigh against Gentry's criminal history. Moreover, Gentry did not receive the maximum punishment available, which was twenty years for the instant offense. Under these facts and circumstances, the court did not err when it increased Gentry's sentence beyond the presumptive ten years for his Class C burglary conviction.

### B. *Appropriateness*

■ Additionally, Gentry requests, without setting forth a cogent argument, that we reduce his sentence. We will not revise a defendant's sentence unless it is "inappropriate in light of the nature of the offense and the character of the offender."

---

**5.** It is unclear whether the trial court considered Gentry's probation violation as an aggravating circumstance. During the sentencing hearing, Judge Monroe stated, "[Y]ou were on probation at the time and so you have violated conditions of probation." Tr. p. 20. However, Judge Monroe's sentencing order does not contain a specific list of aggravating circumstances. Appellant's App. pp. 108–09. Nonetheless, Gentry's significant criminal history of burglary and attempted burglary are sufficient to justify his sentence.

**6.** Morgan's criminal history and admitted probation violation were properly considered as aggravating circumstances under *Blakely.* After holding that the failure to rehabilitate aggravator "was a conclusion about the weight of the first two," the court concluded that the aggravating circumstances were in equipoise with the five mitigating circumstances, and reduced Morgan's enhanced sentence to the presumptive term. *Id.* at 18.

Ind. Appellate Rule 7(B) (2005). Appellate review under Indiana Appellate Rule 7(B) is highly deferential to the trial court. *Martin v. State,* 784 N.E.2d 997, 1013 (Ind. Ct.App.2003). Moreover, the failure to put forth a cogent argument waives an issue for appellate review. *See Groves v. State,* 823 N.E.2d 1229, 1231 n. 2 (Ind.Ct.App. 2005).

 Gentry's failure to offer more than a mere conclusory statement[7] that his sentence should be reduced waives his opportunity for appellate review. Waiver notwithstanding, we observe that Gentry's sentence of thirty-five years is not inappropriate in light of Gentry's criminal record and the nature of his offenses, and taking into consideration the fact that Gentry received less than the maximum possible total sentence of fifty years.

### III. Final Instruction 10

Finally, Gentry challenges Final Instruction 10 given to the jury on the basis that it shifts the burden of proof from the State to Gentry. *See* Br. of Appellant pp. 10–11. Final Instruction 10 states:

> Intent is a mental state, and the trier of fact must, absent an admission, resort to reasonable inferences based upon examination of surrounding circumstances to determine whether from a person's conduct; and the natural consequences that might be expected from that conduct, there exists a showing or inference of intent to commit that conduct.

Appellant's App. p. 78. At trial, Gentry's attorney objected to the giving of Final Instruction 10 as follows: "I think ... the Court's proposed instructions addressed ... it's intent, it gives the legal definition of, of intent or knowingly or, knowingly or

intentionally and I would prefer that one be used over the State's. That's our objections." Tr. p. 229.

 Failure to object to jury instructions at trial results in waiver of the claimed error, rendering it unavailable on appeal. Ind. Trial Rule 51(C). An objection to a jury instruction must be made with sufficient specificity to make the trial court aware of any alleged error before the judge reads the instruction to the jury. *See Luna v. State,* 758 N.E.2d 515, 518 (Ind.2001) (citing *Scisney v. State,* 701 N.E.2d 847, 849 (Ind.1998)).

 At trial, Gentry never objected to Final Instruction 10 on the grounds he now attempts to raise on appeal. Gentry's attorney merely stated his preference that a particular instruction be used as opposed to Final Instruction 10. Nothing was mentioned at trial regarding shifting the burden of proof from the State to Gentry. As such, Gentry has waived all consideration of the trial court's final instruction for failure to make a timely, specific objection.

### Conclusion

We conclude the evidence is sufficient to support Gentry's burglary and habitual offender convictions, and that the trial court properly sentenced Gentry. Gentry waived any objection to Final Instruction 10. We therefore deny Gentry's request to vacate or reduce his sentence.

Affirmed.

DARDEN, J., and CRONE, J., concur.

---

7. "After reviewing the facts in this cause, Jerome Gentry requests that this Court find that the trial Court erred in the sentence imposed. Jerome Gentry requests that if this cause is not reversed based upon other issues argued herein, that because of the unique factual situation contained in this cause, that his sentenced be reduced to the six (6) year minimum permitted by law...." Br. of Appellant, p. 22.