## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Apr 18 2019, 7:47 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Matthew J. McGovern
Anderson, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

James B. Martin
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Darion Lamar Bailey,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff*

April 18, 2019

Court of Appeals Case No.
18A-CR-1072

Appeal from the Vanderburgh
Superior Court

The Honorable Robert J. Pigman,
Judge

Trial Court Cause No.
82D03-1703-F2-1687

**Baker, Judge.**

[1] Darion Bailey appeals his conviction for Level 2 Felony Possession of Methamphetamine with the Intent to Deliver,[1] arguing that the trial court erroneously admitted certain testimony. Bailey also appeals the trial court's finding that he is an habitual offender, arguing that the trial court erroneously admitted evidence because it was inadmissible hearsay and that the evidence was insufficient to support the finding. Finding no error and that the evidence was sufficient, we affirm.

# Facts

[2] On March 21, 2017, Evansville Police Department Detective Crystal Thomas was patrolling the Arbors Apartment Complex as a part of the Operation Safe Streets drug enforcement program. At roughly 3:53 p.m., Detective Thomas saw Bailey "duck down" and put something in his bag. Tr. Vol. II p. 48. Detective Thomas noticed that Bailey was closely watching a nearby officer, Detective Quentin Wilkerson, while he was doing this. Detective Thomas alerted Detective Wilkerson to Bailey's presence. Bailey then put on his backpack and started walking away. Detective Thomas radioed Sergeant David Eads and Officer Doug Bueltel to tell them about a suspicious person moving towards them.

---

[1] Ind. Code § 35-48-4-1.1(a)(2).

Sergeant Eads and Officer Bueltel spotted Bailey, approached him, and attempted to question him, but Bailey tried to flee. Sergeant Eads grabbed Bailey, but Bailey slipped away, abandoning his backpack. While Officer Bueltel chased Bailey on foot, Sergeant Eads stayed behind because he detected the smell of marijuana coming from Bailey's backpack. Inside the backpack, Sergeant Eads found a loaded handgun, a cigarette cellophane containing prescription medication, a prescription bottle with marijuana buds inside, a container of marijuana weighing 26.63 grams, multiple digital scales, individual baggies filled with a substance later determined to be methamphetamine, a jar containing methamphetamine weighing 5.51 grams, and $481 in cash.

Nearby Officer John Montgomery assisted Officer Bueltel by pursuing Bailey in his vehicle. When Officer Montgomery exited his vehicle, Bailey threw a semi-automatic weapon to the ground and surrendered. Another officer, Detective Justin Jackson, arrested Bailey.

On March 23, 2017, the State charged Bailey with one count of Level 2 felony possession of methamphetamine with the intent to deliver (Count I); one count of Level 4 felony possession of methamphetamine (Count II); two counts of Level 5 felony carrying a handgun without a license (Counts III and IV); one count of Level 6 felony possession of a controlled substance (Count V); one count of Level 6 felony possession of marijuana (Count VI); and one count of Class A misdemeanor resisting law enforcement (Count VII). On February 12, 2018, the State added two counts of Level 6 felony theft of a firearm (Counts VIII and IX). The State also alleged that Bailey was an habitual offender with

respect to Counts I, II, III, V, VIII, and IX. Bailey's jury trial took place on February 26-27, 2018.

[6] At Bailey's jury trial, Sergeant Eads testified that he had been a narcotics investigator assigned to the Evansville-Vanderburgh County Drug Task Force for twelve years; that he had training from the Drug Enforcement Agency (DEA); that he had attended several undercover and surveillance schools on drug assignments; that he had worked on "several hundred" narcotics dealing cases; and that he had had training in narcotics recognition and drug interdiction. Tr. Vol. II p. 65. Sergeant Eads also testified that small digital scales, plastic sandwich baggies, "other types of packaging materials[,]" ledgers, currency, and firearms are items often associated with someone dealing in narcotics. *Id.* at 68.

[7] The State then asked Sergeant Eads the following questions:[2]

> Q: Generally speaking with, for instance like powdered meth or methamphetamine, what would be a typical, in your experience, a typical user amount?
>
> A: User amounts, like I said, are a lot smaller generally than what we find in a dealing situation. The user amount I would say is typically a gram or less and an example I have given in the past of a gram is like a Sweet and Low packet that you put in your drink or whatever, that's about a gram of stuff in there so talking about a pretty small amount and a lot of that is due to the price, you know, the lifestyle. They just don't have enough money to afford to have it. It's not like you go to Sam's and stock up because it's cheap.

---

[2] In this excerpted testimony, "Q" is the State and "A" is Sergeant Eads.

The price is and you can only get what you can afford and the amounts are smaller.

Q: Okay. If somebody hypothetically were found with 5.51 grams of methamphetamine in your experience would that be considered, would you consider that more of a dealer weight or user weight?

*Id.* at 69-70. Bailey objected to this question because he contended that the State was asking Sergeant Eads to conclude that Bailey was a drug dealer. The trial court overruled Bailey's objection. The testimony continued as follows:

Q: In your experience that amount of methamphetamine, 5.51 grams, is that consistent with, in your experience, with the use of narcotics or dealing narcotics?

A: It would be more of a dealing amount so that would be more than a personal use amount in my opinion.

*Id.* at 70-71.

[8] Later in the trial, Bailey objected to the following testimony from Sergeant Eads on the same grounds:

Q: Now one quick question. In your training and experience, Detective Eads, is there a particular way that you would describe the items that were found in the backpack as you observed them based on your training and experience?

A: Yes. As I may have mentioned earlier, I've done training, presented training, presented classroom presentations to schools and in public groups alike and part of those presentations often involves taking actual items that we recovered in previous arrests that have been disposed of and showing people what things look like that are used in this kind of stuff. Meth lab presentations, used to do a lot of those. If I was going somewhere to do a presentation

on, on what a drug dealer might have I could have just taken this backpack. It had, you know, everything you needed; product, bags, scales, money, protection.

*Id.* at 93. Once again, the trial court overruled Bailey's objection.

[9] On the second day of the jury trial, the trial court held a separate proceeding regarding the State's claims that Bailey was an habitual offender. To support these claims, the State presented charging informations filed in causes 82D02-0911-FD-1097, 82D02-1108-FD-861, and 82C01-1506-F6-3369, in which a man named Darion Bailey was charged with felony intimidation, felony failure to return to lawful detention, and felony resisting law enforcement, respectively. The State also presented the certified chronological case summaries and abstracts of judgment to supplement this charging information. The Darion Bailey listed on the charging information and the Darion Bailey on trial shared the same name, birthdate, social security number, Indiana driver's license number, height, and body weight within a ten-pound range. Bailey objected to the introduction of these documents, arguing that the biographical information constituted inadmissible hearsay. The trial court overruled Bailey's objection and admitted the evidence.

[10] At the conclusion of trial, the jury found Bailey guilty on all counts except for Counts VIII and IX. The jury also found that Bailey was an habitual offender. At the April 4, 2018, sentencing hearing, the trial court sentenced Bailey to concurrent terms of twenty-five years for Count I; three years for Count III; four years for Count IV; five years for Count V; 180 days for Count VI; and one

year for Count VII. The trial court vacated the conviction for Count II on double jeopardy grounds. The trial court also enhanced the Count I sentence by twenty years due to the habitual offender adjudication, for an aggregate sentence of forty-five years. Bailey now appeals.

# Discussion and Decision

# I. Admission of Evidence

First, Bailey argues that the trial court erroneously admitted Sergeant Eads's testimony because it reached a legal conclusion, thereby warranting a reversal of his conviction for Level 2 felony possession of methamphetamine with the intent to deliver.

Reversal of a trial court's admissibility determinations is appropriate only where the decision is clearly against the logic and effect of the facts and circumstances. *Joyner v. State*, 678 N.E.2d 386, 390 (Ind. 1997). "Moreover, we will sustain the trial court['s] [decision on the admission of certain evidence] if it can be done on any legal ground apparent in the record." *Jester v. State*, 724 N.E.2d 235, 240 (Ind. 2000).

Specifically, Bailey argues that Sergeant Eads's testimony about the amount of methamphetamine users typically keep versus the amount dealers typically keep inappropriately concluded that Bailey was a dealer, which is a conclusion that only the jury was permitted to reach. Additionally, Bailey contends that Sergeant Eads's testimony about a standard "hypothetical" drug dealer's

backpack inappropriately reached the same conclusion about Bailey because Sergeant Eads referred pointedly to Bailey's backpack.

[14] Indiana Evidence Rule 704(a) states that "[t]estimony in the form of an opinion or inference otherwise admissible is not objectionable just because it embraces an ultimate issue." Therefore, as long as the evidence proffered only "embraces" an issue in the form of an opinion or inference, there is no violation. However, Indiana Evidence Rule 704(b) explicitly states that "[w]itnesses may not testify to opinions concerning intent, guilt, . . . or legal conclusions." Only a jury may reach such conclusions because the jury is the ultimate trier of fact.

[15] Our Supreme Court has defined the contours of Rule 704 with the following analysis:

> Taken together, those principles [found in Rules 704(a) and 704(b)] establish that even in criminal cases, opinion testimony may include "evidence that *leads* to an [incriminating] inference, even if no witness could state [an] opinion with respect to that inference." *Steinberg v. State*, 941 N.E.2d 515, 526 (Ind. Ct. App. 2011) (second alteration in original) (emphasis added) (quoting 13 Robert L. Miller, Jr., *Indiana Practice Series* § 704.201 at 589 (3d ed. 2007)). But an opinion must stop short of the question of guilt— because under Rule 704(b) and our constitution, that is the one "ultimate issue" that the jury alone must resolve.

*Williams v. State*, 43 N.E.3d 578, 581 (Ind. 2015). In other words, a witness can give opinions that might lead to an incriminating inference, but the witness cannot then reach conclusions about someone's guilt, innocence, or intent based off those opinions.

[16]     We cannot say that Sergeant Eads's testimony about the amount of methamphetamine a dealer typically keeps on his person is a legal conclusion. The State properly asked Sergeant Eads about his credentials— namely, his education in the field of narcotics and drug dealing, and his extensive experience working in this area as part of the Evansville Police Department. Then, with this information presented to the jury, the State asked Sergeant Eads a series of questions, based on his experience and training, about the amount of methamphetamine a recreational drug user would keep on his person versus the amount a drug dealer would keep on his person. Sergeant Eads responded with the following:

> A: User amounts, like I said, are a lot smaller generally than what we find in a dealing situation. The user amount I would say is typically a gram or less and an example I have given in the past of a gram is like a Sweet and Low packet that you put in your drink or whatever, that's about a gram of stuff in there so talking about a pretty small amount and a lot of that is due to the price, you know, the lifestyle. They just don't have enough money to afford to have it. It's not like you go to Sam's and stock up because it's cheap. The price is and you can only get what you can afford and the amounts are smaller.

Tr. Vol. II p. 69-70. Additionally, Sergeant Eads testified that 5.51 grams of methamphetamine was "more of a dealing amount so that would be more than a personal use amount in my opinion." *Id.* at 71.

[17]     At no point in this testimony did Sergeant Eads state that Bailey was a dealer or that he had the requisite intent to deliver or sell methamphetamine. Rather, this testimony represented Sergeant Eads's opinions on narcotics operations and the

characteristics of how drug dealers operate based on his particular expertise. At most, Sergeant Eads's statements represented evidence leading to incriminating inferences, but such statements are permissible under Rules 704(a) and 704(b). Furthermore, if it has been shown that a police officer has enough experience in the area, he may give an opinion on whether or not drugs are held for sale or for personal use without violating any evidentiary stricture. *See Powers v. State*, 440 N.E.2d 1096, 1106 (Ind. 1982).

[18] We also cannot say that Sergeant Eads's testimony about a typical drug dealer's backpack in relation to what he found in Bailey's backpack amounted to a legal conclusion. The same analysis applies to the following testimony:

> A: Yes. As I may have mentioned earlier, I've done training, presented training, presented classroom presentations to schools and in public groups alike and part of those presentations often involves taking actual items that we recovered in previous arrests that have been disposed of and showing people what things look like that are used in this kind of stuff. Meth lab presentations, used to do a lot of those. If I was going somewhere to do a presentation on, on what a drug dealer might have I could have just taken this backpack. It had, you know, everything you needed; product, bags, scales, money, protection.

[19] Tr. Vol. II p. 93. Once again, Sergeant Eads was testifying, based on his education and experience, that this backpack was typical of a drug dealer. Unlike the expert witness who plainly affirmed that the defendant had committed four rapes in *Ross v. State*, 516 N.E.2d 61, 63 (Ind. 1987), Sergeant Eads was merely highlighting the actions, paraphernalia, and criminal conduct

he has witnessed and studied over the course of his law enforcement career. Therefore, the trial court did not err in admitting this testimony.

[20] Moreover, even if there was error, it was, at most, harmless error. The improper admission of evidence is harmless error if the conviction is supported by substantial, independent evidence of guilt satisfying us that there is no substantial likelihood the challenged evidence contributed to the conviction. *Turner v. State*, 953 N.E.2d 1039, 1059 (Ind. 2011).

[21] Here, there was substantial, independent evidence supporting Bailey's felony possession of methamphetamine with the intent to deliver conviction. Not only did he keep large amounts of methamphetamine on his person, but his backpack contained a loaded handgun, a cigarette cellophane containing prescription medication, a prescription bottle with marijuana buds inside, a container of marijuana weighing 26.63 grams, multiple digital scales, individual baggies filled with methamphetamine, a jar containing methamphetamine weighing 5.51 grams, and $481 in cash. The jury could have used this evidence to convict Bailey of felony possession of methamphetamine with the intent to deliver. *McGuire v. State*, 613 N.E.2d 861, 864 (Ind. Ct. App. 1993) (holding that "[c]ircumstantial evidence of intent to deliver, such as possession of a large quantity of drugs, large amounts of currency, scales, plastic bags, and other paraphernalia . . . can support a conviction[]"). Additionally, Sergeant Eads testified for a long time, and the jury trial took place over the course of two days with multiple other witnesses and exhibits. So, there was not a substantial likelihood that this isolated evidence contributed to Bailey's conviction.

# II. Habitual Offender Adjudication

# A. Admission of Evidence

[22] Bailey next argues that the trial court erred when it admitted charging informations during the habitual offender proceeding because it was inadmissible hearsay.

[23] We will overrule a trial court's ruling on the admission of evidence only when the ruling is clearly against the logic and effect of the facts and circumstances before it. *Halliburton v. State*, 1 N.E.3d 670, 675 (Ind. 2013).

[24] Specifically, Bailey contends that the State introduced the current charging information to show that Bailey's social security number and birthdate matched the name, birthdate, and social security number found on the charging informations and chronological case summaries for the predicate felonies. And, because this charging information contained out-of-court statements— biographical information—it was proffered to prove the truth of the matter asserted, thereby amounting to inadmissible hearsay.

[25] Pursuant to Indiana Evidence Rules 801(b) and 801(c), hearsay statements— those made by someone other than the declarant to prove the truth of the matter asserted—are generally inadmissible. However, hearsay statements are admissible if they fall under one of any number of exceptions. One such exception is the public records exception, and public records are defined as:

(A) A record or statement of a public office if:

(i) it sets out:

(a) the office's regularly conducted and regularly recorded activities;

(b) a matter observed while under a legal duty to [observe and] report; or

(c) factual findings from a legally authorized investigation; and

(ii) neither the source of information nor other circumstances indicate a lack of trustworthiness.

Ind. Evidence Rule 803(8)(A).

[26] Bailey contends that the charging informations for these current and predicate offenses are not public records and are not excepted because they are police investigative reports and represent factual findings offered by the government. Pursuant to Indiana Evidence Rule 803(8)(B), such documents/findings are not public records and are not excepted from the rule against hearsay. We find Bailey's argument unavailing.

[27] In *Fowler v. State*, our Court held that police records created in connection with routine booking procedures fall under the public records exception because they are unambiguous, ministerial, and objective matters made in non-adversarial settings. 929 N.E.2d 875, 879 (Ind. Ct. App. 2010). The same analysis applies to the charging informations in this case. The State proffered certified records of charging information for the current offenses in addition to charging informations and chronological case summaries for the predicate offenses.

These documents do not contain factual findings and are not investigative reports. Rather, they were offered for their identification materials—namely, birthdates, social security numbers, height, and weight. These facts are not factual findings accumulated by the government in a criminal case, but rather, information that properly identifies a criminal suspect and registers him with the criminal justice system. Furthermore, even if the charging information is more subjective and investigative in nature, the biographical information was obtained and recorded in the course of a ministerial, nonevaluative charging process. *Id.* As such, the trial court did not err in admitting this charging information.

# B. Sufficiency of Evidence

[28] Finally, Bailey argues that the evidence was insufficient to support the finding that he is an habitual offender.

[29] If the evidence yields logical and reasonable inferences from which the finder of a fact may determine beyond a reasonable doubt that it was that defendant that was convicted of the prior felony, then a sufficient connection has been shown. *Tyson v. State*, 766 N.E.2d 715, 718 (Ind. 2002). It is not our job to reweigh the evidence or to judge the credibility of the witnesses, and we consider any conflicting evidence most favorably to the trial court's ruling. *Wright v. State*, 828 N.E.2d 904, 906 (Ind. 2005).

[30]    We have already determined that the trial court's admission of the charging informations for both this offense and the predicate felonies was not in error. And, our Court has already concluded that a charging information, standing alone, with key biographical information that corresponds with previously certified records, constitutes sufficient evidence to support a finding that the defendant is an habitual offender. *See, e.g., Gentry v. State*, 835 N.E.2d 569, 574 (Ind. Ct. App. 2005) (holding that a "reasonable jury could certainly find that the matching names, dates of birth, and social security numbers were sufficient to prove that the individual discussed in the documents was the present appellant[]"); *Tate v. State*, 835 N.E.2d 499, 510 (Ind. Ct. App. 2005) (holding that use of certified copies of judgments or commitments containing a defendant's name or a similar name may be introduced to prove commission of prior felonies); *Lewis v. State*, 769 N.E.2d 243, 246-47 (Ind. Ct. App. 2002) (holding that charging information from predicate convictions that contains the same social security number and general identifying information as current documents is enough to determine that an individual is an habitual offender).

[31]    Accordingly, our inquiry ends here. Even though the State presented no witnesses, the charging informations and chronological cases summaries containing key biographical information were enough. The name, birthdate, social security number, Indiana driver's license number, and height were the same on both sets of documents. A reasonable trier of fact could conclude that Bailey is an habitual offender.

[32]     The judgment of the trial court is affirmed.

May, J., and Robb, J., concur.