## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Nov 16 2020, 9:01 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Aaron J. Stoll
Fort Wayne, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Samuel J. Dayton
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Javier Contreras-Garcia, *Appellant-Defendant,* | November 16, 2020 |
| v. | Court of Appeals Case No. 20A-CR-768 |
| | Appeal from the Allen Superior Court |
| State of Indiana, *Appellee-Plaintiff.* | The Honorable David M. Zent, Judge |
| | Trial Court Cause No. 02D05-1808-F1-13 |

**Altice, Judge.**

# Case Summary

Following a guilty plea, Javier Contreras-Garcia appeals the twenty-four-year aggregate sentence that was imposed following his convictions for criminal confinement, a Level 3 felony, and aggravated battery, a Level 3 felony. Garcia argues that the trial court abused its discretion by identifying improper aggravating circumstances, failing to identify a mitigating factor that was supported by the record, affording only minimal weight to the mitigating factors that it found, and ordering consecutive sentences.

We affirm.

# Facts and Procedural History

Contreras-Garcia and his former girlfriend, L.C., were living together in Fort Wayne in late July 2018. They had a son together and had been in an eight-year relationship. Although L.C. had asked Contreras-Garcia to move out six months earlier, he refused.

On July 29, 2018, at approximately 5:00 a.m., Contreras-Garcia awakened L.C. by "head butting" her in the forehead. *Appellant's Appendix Vol. II* at 26. Contreras-Garcia accused L.C. of "cheating on [him]" and began slapping her and punching her in the face. *Id.* L.C. sustained a black eye, lacerations on her

lips, and a large contusion on the left corner of her mouth. The contusion extended through L.C.'s cheek to the inside of her mouth.

[5] At some point, Contreras-Garcia pulled a large kitchen knife from his waistband, "got on top" of L.C., and threatened to kill her. *Id.* When Contreras-Garcia attempted to stab L.C. in the throat, L.C. shouted "no," pleaded for him to stop, and lifted her hands to block the knife. *Id.* at 27. L.C. grabbed the knife with both hands, cut her fingers, and pushed the knife away from her neck.

[6] Contreras-Garcia then threatened to kill L.C. if she did not unlock her phone. L.C. was not able to comply because her hands were covered with blood. Contreras-Garcia then grabbed the phone from L.C. and demanded the code to unlock it, which L.C. provided. As L.C. "continued to beg for her life," Contreras-Garcia told her that she "should die." *Id.* At one point during the attack, Contreras-Garcia threatened to kill L.C.'s entire family if she told the police about what he had done to her. Contreras-Garcia stated that he would allow L.C. to live only if she would "swear on the bible and to God that she would not tell on him." *Id.* L.C. agreed and Contreras-Garcia followed her into the bathroom to prevent her from escaping.

[7] After L.C. wrapped towels around her hands to stop the bleeding, Contreras-Garcia ordered L.C. into the shower. L.C. tried to resist because she feared that Contreras-Garcia would kill her in the bathroom. *Id.* L.C., however, showered at Contreras-Garcia's insistence and he then ordered L.C. back to

bed. Contreras-Garcia stated that he was "going to make [her his] now," removed L.C.'s nightgown, and shoved her onto the bed. *Id.*

[8] Contreras-Garcia touched L.C.'s bare breasts and "female sex organ" with his hands and mouth. *Id.* at 27. When Contreras-Garcia began to perform oral sex on L.C., she told him to stop. Contreras-Garcia refused and "placed his penis in L.C.'s vagina and had sex with her against her will." *Id.* L.C. was unable to fight Contreras-Garcia because she felt weak and her bleeding hands were still wrapped in towels. She also believed that Contreras-Garcia would kill her if she resisted.

[9] Following the attack, Contreras-Garcia spent the next two hours "cleaning up the crime scene." *Id.* at 28. He mopped up L.C.'s blood and washed her clothes and the bedding. Contreras-Garcia cleaned his fingerprints from the knife and eventually drove L.C. to the hospital emergency room. Contreras-Garcia followed L.C. inside and "waited to make sure she told the false story he had concocted to [the emergency room] staff." *Id.* at 28. Contreras-Garcia had convinced L.C. "to say that she had been attacked by two women and got cut fighting them." *Id.* After requiring L.C. to "swear again not to 'disavow' him," Contreras-Garcia left the emergency room and did not return. *Id.* at 28. At that point, L.C. telephoned her daughter and subsequently told the police and emergency hospital room staff what had occurred.

[10] On August 15, 2018, the State charged Garcia with two counts of rape, each a Level 1 felony, criminal confinement, a Level 3 felony, sexual battery, a Level 4

felony, and two counts of domestic battery, one a Level 5 felony and the other a Level 6 felony. The State subsequently amended the charging information to include one count of aggravated battery, a Level 3 felony, and reduce the rape charges to a Level 3 felony.

[11] On February 18, 2020, Contreras-Garcia pleaded guilty to Level 3 felony criminal confinement and to Level 3 felony aggravated battery, with no agreement as to the sentence. At the guilty plea hearing, the deputy prosecutor read from the probable cause affidavit and discussed the circumstances and nature of the crimes, and pointed out that while L.C. had undergone surgery on her fingers, she still had "nerve damage to her hand" and cannot fully function. *Transcript Vol. III* at 11. The trial court accepted Contreras-Garcia's guilty plea, dismissed the remaining charges, and set the matter for sentencing.

[12] At the sentencing hearing on March 16, 2020, the trial court identified Contreras-Garcia's lack of criminal history as a mitigating circumstance. It afforded "minimal weight" to Contreras-Garcia's decision to plead guilty and his alleged remorse as mitigating factors because the jury was "literally waiting to begin the trial," and Contreras-Garcia was "about to be sentenced to two major felonies." *Transcript Vol. III* at 14. The trial court then observed that the "facts and circumstances" of the crime were "very aggravating" and sentenced

Contreras-Garcia to twelve years on each charge and ordered the sentences served consecutively to each other.[1]  *Id.*  Garcia now appeals.

## Discussion and Decision

[13]  In addressing Contreras-Garcia's claims that the trial court erred in sentencing him, we initially observe that sentencing decisions are within the sound discretion of the trial court and are reviewed on appeal only for an abuse of discretion.  *Anglemyer v. State*, 868 N.E.2d 482, 490 (Ind. 2007), *clarified on reh'g* 875 N.E.2d 218 (Ind. 2007); *Hudson v. State,* 135 N.E.3d 973, 979 (Ind. Ct. App. 2019).  A trial court abuses its discretion when it fails to enter a sentencing statement at all, its stated reasons for imposing the sentence are not supported by the record, its sentencing statement omits reasons that are clearly supported by the record and advanced for consideration, or its reasons for imposing the sentence are improper as a matter of law.  *Anglemyer,* 868 N.E.2d at 490-91; *Hudson,* 135 N.E.3d at 979.

[14]  We further note that the relative weight assignable to reasons properly found by the trial court to enhance a defendant's sentence is not subject to review for abuse of discretion.  *Gross v. State,* 22 N.E.3d 863, 869 (Ind. Ct. App. 2014), *trans. denied*.  The determination of mitigating circumstances is within the trial

---

[1] The sentencing range for a Level 3 felony is three to sixteen years, with an advisory sentence of nine years.  Ind. Code § 35-50-2-5(b).

court's discretion, and the trial court is under no obligation to explain why a proposed mitigator does not exist or why the court found it to be insignificant. *Sandleben v. State,* 22 N.E.3d 782, 796 (Ind. Ct. App. 2014), *trans. denied.* Additionally, a trial court is not obligated to accept the defendant's argument as to what constitutes a mitigating factor, and the court is not required to give the same weight to proffered mitigating factors as does a defendant. *Rogers v. State,* 878 N.E.2d 269, 272 (Ind. Ct. App. 2007), *trans. denied.*

[15] Contreras-Garcia's initial claim is that the trial court abused its discretion because it improperly considered the facts and circumstances surrounding the dismissed charges when it sentenced him. Contrary to this contention, our Supreme Court has determined that when a plea agreement does not prohibit the consideration of facts that relate to charges that are dismissed, trial courts need not "turn a blind eye to the incident that brought the defendant before them." *Bethea v. State*, 983 N.E.2d 1134, 1145 (Ind. 2013). In other words, to the extent that an aggravating circumstance was a material element of one of the dismissed charges, the trial court may consider it. Hence, the nature and circumstances of the crime as well as how the offense is committed may be a valid aggravating circumstance. *Id.*

[16] Additionally, pursuant to Indiana Code § 35-38-1-7.1(a), trial courts are permitted to consider the harm, injury, loss, or damage suffered by the victim that was significant and greater than the elements necessary to prove the commission of the offense when imposing the sentence. The statute also allows

a trial court to identify as an aggravating factor the defendant's threat of harm to the victim if he or she told anyone about the offense. *Id.*

[17] To prove criminal confinement as a Level 3 felony, the State was required to show that Contreras-Garcia knowingly or intentionally confined L.C. without L.C.'s consent while he was armed with a deadly weapon. Ind. Code § 35-42-3-3(a). To prove the commission of aggravated battery as a Level 3 felony, the State was required to demonstrate that Contreras-Garcia knowingly or intentionally inflicted injury on L.C. that created a substantial risk of death, caused serious permanent disfigurement, or caused protracted loss or impairment of the function of a bodily member or organ. Ind. Code § 35-42-2-1.5(1).

[18] The record establishes that Contreras-Garcia's brutal attack on L.C. far exceeded the elements that the State was required to prove for criminal confinement and aggravated battery as Level 3 felonies. Contreras-Garcia entered L.C.'s bedroom armed with a large kitchen knife, head butted her, and repeatedly threatened to kill her. For over an hour, L.C. begged for her life to be spared. Contreras-Garcia repeatedly tried to stab L.C.'s neck, but she grabbed the knife with both hands to protect herself. Contreras-Garcia twisted the knife when L.C. grabbed it that resulted in severe damage to her fingers. L.C. required surgery and multiple stitches, and her fingers did not regain their normal function.

[19] Because L.C.'s hands were covered in blood, she was not able to unlock her phone as Contreras-Garcia had ordered. Rather than allowing L.C. to attend to her injuries, Contreras-Garcia continued to strike her, call her names, and tell her that she "deserved to die." *Appellant's Appendix Vol. II* at 27. Contreras-Garcia then forced L.C. to engage in oral sex and sexual intercourse against her will. Contreras-Garcia spent hours "cleaning up the crime scene" and allowed L.C. to go to the hospital only after she swore "not to turn him in." *Id.* at 26-28. Contreras-Garcia demanded that L.C. lie to the police and others about how she was injured, and L.C. was unable to tell the truth until Contreras-Garcia left her alone at the hospital.

[20] While the facts and circumstances surrounding the offenses readily support the sentence that the trial court imposed, Contreras-Garcia claims that the trial court erred in not affording greater mitigating weight to his decision to plead guilty, his show of remorse, or his lack of criminal history. He fails to recognize, however, that these claims are not subject to appellate review. *See Anglemeyer*, 868 N.E.2d at 493-94. Even so, a defendant's acceptance of responsibility and his agreement to plead guilty "may not be significantly mitigating when [they] do not demonstrate the defendant's acceptance of responsibility . . . or when the defendant receives a substantial benefit in return for the plea." *Anglemeyer*, 875 N.E.2d at 221 (citing *Sensback v. State*, 720 N.E.2d 1160, 1165 (Ind. 1999)).

[21] Here, Contreras-Garcia avoided conviction and lengthy sentences on several serious criminal offenses, including two Level 3 felony rape charges in light of

his decision to plead guilty to the two lesser offenses. The trial court could reasonably conclude that Contreras-Garcia's decision to plead guilty reflects an appreciation for the substantial benefits of the plea rather than a genuine acceptance of responsibility.

[22] As for Contreras-Garcia's expressions of remorse, it has long been established that the trial court is in the best position to evaluate the importance of such evidence for sentencing. *Gibson v. State,* 856 N.E.2d 142, 148 (Ind. Ct. App. 2006). As in other credibility determinations, we do not reweigh a trial court's assessment of a defendant's expressions of remorse. *Pickens v. State,* 767 N.E.2d 530, 535 (Ind. 2002).

[23] We also reject Contreras-Garcia's claim that the trial court erred in not identifying the impact that his incarceration will have on his dependent son as a mitigating circumstance. Before such an impact may be considered a mitigating circumstance, it must be established that the hardship is "undue." Ind. Code § 35-38-1-7.1(b)(10); *Dowdell v. State*, 720 N.E.2d 1146, 1154 (Ind. 1999). Contreras-Garcia's son was almost nine years old at the time of the sentencing hearing, and Contreras-Garcia had not been ordered to pay child support. There is nothing in the record to suggest that Contreras-Garcia has ever provided for his child. Thus, Contreras-Garcia's claim fails.

[24] Finally, we reject Contreras-Garcia's claim that the trial court abused its discretion in ordering consecutive sentences. There is no prohibition against a trial court's reliance upon the same aggravating circumstances both to enhance

a sentence and to order it served consecutively. *Blanche v. State,* 690 N.E.2d 709, 716 (Ind. 1998). There is also no requirement that a trial court must identify the factors that support an enhanced sentence separately from those that support consecutive sentences. *Moore v. State,* 907 N.E.2d 179, 181 (Ind. Ct. App. 2009), *trans. denied.* That said, the facts and circumstances demonstrating the overwhelming, brutal, and callous violence that Contreras-Garcia advanced against L.C. support both the enhanced and consecutive sentences that the trial court imposed. *See Bethea*, 983 N.E.2d at 1145 (citing *Anglemeyer*, 868 N.E.2d at 492) (observing that the nature and circumstances of the crime as well as the manner in which the crime is committed is a valid aggravating factor). Thus, the trial court did not abuse its discretion in sentencing Contreras-Garcia.[2]

[25] Judgment affirmed.

Riley, J. and May, J., concur.

---

[2] As an aside, we note that Contreras-Garcia asserts in his statement of the issues that his sentence was "inappropriate in light of the nature of the offense and the character of the offender." *Appellant's Brief at 4.* Contreras-Garcia, however, does not make any arguments related to why his sentence is inappropriate and only focuses on the aggravators and mitigators identified by the trial court. Thus, he has waived his unsupported claim that his sentence is inappropriate. *See Sandleben v. State,* 29 N.E.3d 126, 136 (Ind. Ct. App. 2015)(concluding that the defendant waived an inappropriate sentence argument by failing to advance cogent argument on that issue), *trans. denied*; *see also Gentry v. State,* 835 N.E.2d 569, 575-76 (Ind. Ct. App. 2005) (holding that the defendant's failure to offer more than a mere conclusory statement that his sentence should be reduced waives his opportunity for appellate review).